## UNITED STATES v. CARLISI et al.

### No. 37929.

District Court, E. D. New York.

Feb. 20, 1940.

480

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., (James G. Scileppi, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff.

Joseph H. Wackerman, of Brooklyn, N. Y., for defendant James De Simone.

MOSCOWITZ, District Judge.

At the trial certain rulings were made with respect to the admission of testimony. The Court stated that a formal opinion would be filed, hence this opinion.

The defendants James De Simone and Josephine De Simone, husband and wife, respectively, and other defendants were indicted by the Grand Jury charging them with a conspiracy to set up a still on the Herth Farm, South Country Road, Bellport, Suffolk County, New York, to set up a still at 1268 Duntan Avenue, East Patchogue, Suffolk County, New York, and to set up a still at 16 South Milburn Avenue, Baldwin, Nassau County, New York, and to commence business of distillers without filing notice of such intention, to make and ferment mash fit for distillation for the production of spirits and alcohol, and to unlawfully possess quantities of distilled spirits in immediate containers to which there were affixed no Internal Revenue stamps.

James De Simone had previously been indicted in this Court charged with the possession of the still set up at 16 South Milburn Avenue, Baldwin, Nassau County, New York, which is one of the stills referred to in this indictment. Upon the trial of James De Simone under indictment No. Cr. 37646 it was decided by the Court that the search of 16 South Milburn Avenue, Baldwin, Nassau County, New York, and the seizure of the still, mash, distilled spirits and other property mentioned in this indictment was illegal, thereupon a judgment was entered dismissing said indictment No. Cr. 37646. Indictment No. Cr. 37646 contained substantive counts but no conspiracy count. The United States Attorney was therefore not precluded from prosecuting the defendant James De Simone for the crime of conspiracy to possess the still set up, mash and distilled spirits, and to commence the business of distiller without filing notice of such intention, even though the indictment for the substantive counts had been dismissed, for the reason that a conspiracy to possess a still set up, mash and distilled spirits, and to commence business as a distiller without filing notice of such intention could exist

without showing the possession of the still, mash and distilled spirits and that the defendant commenced the business of a distiller without filing notice of such intention. All that need be proven to make the conspiracy complete was the unlawful agreement between two or more persons to possess the still set up, mash and distilled spirits, and the performance of one or more Overt Acts in furtherance of the conspiracy.

■ On the trial of this action the United States Attorney offered testimony of the Alcohol Tax Agents who had made the search and seizure which the Court in the indictment No. Cr. 37646 decided was illegal. Such testimony was excluded upon the ground that the judgment of acquittal rendered upon the merits and the decision that search and seizure was illegal was conclusive of the rights of the parties. This decision was not based upon the doctrine of double jeopardy but upon res judicata, or, perhaps stating it more precisely, the doctrine of estoppel. See United States v. Oppenheimer, 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161, 3 A.L.R. 516, in which the Court decided:

"Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue (United States v. Kissel, 218 U.S. 601, 610, 31 S.Ct. 124, 54 L.Ed. 1168, 1179), but if upon a special plea of the statute, permits

the defendant to be prosecuted again. We do not suppose that it would be doubted that a judgment upon a demurrer to the merits would be a bar to a second indictment in the same words, State v. Fields, 106 Iowa 406, 76 N.W. 802; Whart.Crim. Pl. &Pr., 9th Ed., § 406.

"Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defendant upon the ground that the prosecution is barred goes to his liability as matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another. A plea of the statute of limitations is a plea to the merits (United States v. Barber, 219 U.S. 72, 78, 31 S.Ct. 209, 55 L.Ed. 99, 101), and however the issue was raised in the former case, after judgment upon it, it could not be reopened in a later prosecution. We may adopt in its application to this case the statement of a judge of great experience in the criminal law: 'Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. * * * In this respect the criminal law is in unison with that which prevails in civil proceedings.' Hawkins, J. in Reg. v. Miles, L.R. 24 Q.B. Div. 423, 431. The finality of a previous adjudication as to the matters determined by it is the ground of decision in Com. v. Evans, 101 Mass. 25, the criminal and the civil law agreeing, as Mr. Justice Hawkins says. Com. v. Ellis, 160 Mass. 165, 35 N.E. 773; Brittain v. Kinnaird, 1 Brod. & B. 432, 129 Eng. Rep. 789, 4 J.B. Moore, 50, Gow, N.P. 164, 21 Revised Rep. 680. Seemingly the same view was taken in Frank v. Mangum, 237 U.S. 309, 334, 35 S.Ct. 582, 59 L.Ed. 969, 983, as it was also in Coffey v. United States, 116 U.S. 436, 445 [446], 6 S.Ct. 437, 29 L.Ed. 684, 687."

See, also, Coffey v. United States, 116 U.S. 436, 6 S.Ct. 432, 29 L.Ed. 681; Stone v. United States, 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127; Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446; Helvering v. Mitchell, 303 U.S. 391, 58 S. Ct. 630, 82 L.Ed. 917.

It would, indeed, be a sad commentary on justice if a Court should permit the prosecution to prove facts excluded by a Court

of coordinate jurisdiction where the same defendant is charged with a crime.

A very interesting, instructive, and well-considered editorial on the subject, "Res Judicata With Respect to Criminal Judgments", appeared in the New York Law Journal on December 18th, 19th and 20th, 1939, the author of which was Harry G. Anderson, Esq., of the New York Bar. Mr. Anderson aptly points out the distinction between former jeopardy and res judicata, as follows:

"The doctrine of res judicata, as generally stated, is that a final judgment rendered upon the merits by a court of competent jurisdiction is conclusive of the rights of the parties, or their privies, in subsequent actions, with respect to the points in issue which have been determined in the earlier litigation. Good Health Dairy Products Corp. v. Emery, 275 N.Y., 14, 17 [9 N.E. 2d 758, 112 A.L.R. 401]. Implicit in this doctrine is that the estoppel must be mutual, that is, a party will not be concluded against his contention by a former judgment unless he could have used it as a protection had the judgment been the other way. Conversely, no person can claim the benefit of a judgment as an estoppel unless he would have been prejudiced by a contrary judgment or decision. Black on Judgments (2d Ed.), vol. 2, sec. 548. In the more recent cases there has been a relaxation of the rule of mutuality, but the courts have found it difficult to classify the exceptions. Good Health Dairy Products Corp. v. Emery, supra; Liberty Mutual Ins. Co. v. Colon & Co., 260 N.Y. 305, 311, [183 N.E. 506]. The res judicata rule has been extended to cases where the relationship established between the defendants in the earlier and subsequent litigations has been that of principal and agent, master and servant, indemnitor and indemnitee. Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 127, [32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875]. Other than in these exceptional cases the requirement of mutuality remains an element of the rule. Schindler v. Royal Ins. Co., 258 N.Y. 310, 313 [179 N.E. 711, 80 A.L.R. 1142].

"The courts have frequently referred to the principle of res judicata in criminal cases. In transplanting the doctrine, however, to criminal law the requirement of mutuality had to be abandoned. A prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt. People v. Kief, 126 N.Y. 661, 663, [27 N.E. 556]; People v. Walker, 198 N.Y. 329, 334, [91 N.E. 806]. For this reason doubt has been expressed as to whether the doctrine known to the civil law as res judicata is applicable to criminal cases. People v. Rohrs, 49 Hun. 150, 151 [1 N.Y.S. 672].

"In a more precise sense the rule of res judicata as applied in civil law cannot be said to have an exact counterpart in criminal law. There is, however, a rule of estoppel in criminal law akin to res judicata. As thus used it is a 'rule of evidence' which accords to the accused the right to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial.

"There is, however, a distinction between former jeopardy and res judicata, although the application of these principles is sometimes confused. People v. Rodgers, 184 App.Div. 461 [171 N.Y.S. 451], affirmed 226 N.Y. 671, [123 N.E. 882]. The right to assert the claim of former jeopardy is guaranteed by the constitution, New York State Constitution, Art. I, sec. 6, which is also embodied in a statutory provision. Code of Criminal Procedure, sec. 9. To invoke the claim of former acquittal the accused must show that the prior offense was the same in law and in fact as that involved in the subsequent prosecution. 'The plea will be vicious, if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.' People v. Grzesczak, 77 Misc. 202, 204 [137 N.Y.S. 538], and cases cited.

"Res judicata, however, does not rest upon any constitutional provision. It is 'a rule of evidence' which is imported into the criminal law by virtue of section 392 of the Code of Criminal Procedure, which provides that the rules of evidence in civil cases are applicable to criminal cases. People v. Cryan, 123 Misc. 358 [205 N.Y.S. 852]. To bring himself within the res judicata rule it is not necessary for the defendant to show that the offense for which he is being tried is identical in law or in fact with the earlier criminal proceeding. Res judicata usually concerns itself with

evidentiary or intermediate facts determined in the prior litigation. It must be noted, however, that the evidentiary or intermediate fact may, in some instances, be a complete bar to a second prosecution for another offense. An example of this will be found in a case where the defense upon the earlier trial was an alibi and the later trial is one for the commission of a crime committed at the same time and place. Other examples will be found in the cases hereafter referred to where the defendant was charged with having committed a single criminal act which resulted in two or more legally distinct crimes and where there has been a trial and acquittal for one of the crimes."

If the doctrine of res judicata applies to civil cases, why not to criminal cases? Why should there be a distinction? No good reason logically suggests such distinction.

■ Upon the trial while the Court ruled that no evidence based upon the illegal search and seizure would be received, that, nevertheless, witnesses other than those engaged in the illegal search and seizure could testify to acts and conduct of the defendant James De Simone with reference to the still, mash and distilled spirits. Such evidence was admissible to prove that the defendant James De Simone was engaged in the conspiracy charged in the indictment. Had it been necessary as a part of the government's case to prove the actual possession of the still, mash and distilled spirits, such evidence would be inadmissible as it had been excluded by the Court in the indictment No. Cr. 37646, and such ruling would have been binding on this Court under the doctrine of res judicata. Such proof, while material, was not necessary as the defendant James De Simone was not charged in the case at bar with the possession of the still, mash and distilled spirits but a conspiracy so to do.

■ The defense of res judicata is not available to Josephine De Simone as she was not a defendant in indictment No. Cr. 37646. In order that the doctrine of res judicata apply the prosecution must be against the same defendant.

■ There were twenty-nine individual defendants and one corporation on trial. The defendants were seated in the order in which their names appeared in the indictment. Most of the defendants had names which were of foreign origin, they were difficult to pronounce and to remember. The Court requested the United States. Attorney to prepare a diagram showing the names of the defendants and the order in which they were seated. Over the objection of the attorney for the defendants James and Josephine De Simone, each of the jurors received a copy. This was done for the purpose of enabling the jurors to properly follow the testimony and to distinguish the defendants. There can be no legal objection to this procedure. The furnishing of this diagram to the jurors was undoubtedly helpful to them in following the testimony. Without the diagram it is probably true the jurors would have been confused as to the identity of the defendants.

■ Perhaps once or twice during the trial a juror made a note of a date or the name of a witness. Objection to this was made by the attorney for James and Josephine De Simone. Such objection was overruled for the reason that there were twenty-nine individual defendants on trial, many witnesses testified, and there was testimony mentioning the names of many persons, dates and occurrences. There is no legal reason why such notes should not be made by jurors. Judges and lawyers make notes, why not jurors? Certainly the making of notes would better aid their memories and thus enable them to more intelligently consider the evidence.

■ While it did not happen in this case I see no objection to all jurors, if they desire, making notes which could be used by them to refresh their recollections, when we realize that the purpose of a law suit is to do justice rather than make it a game of chance. The Courts should make progress with the times.