PEOPLE v GOSS

Docket No. 147711. Submitted January 14, 1993, at Detroit. Decided June 7, 1993, at 9:15 A.M. Leave to appeal granted, 444 Mich —.

Darryl S. Goss was convicted by a jury in the Detroit Recorder's Court of felony murder, two counts of assault with intent to murder, two counts of first-degree criminal sexual conduct, kidnapping, and armed robbery. The Court of Appeals, WAHLS, P.J., and McDONALD and C. W. SIMON, JR., JJ., affirmed in an unpublished opinion per curiam decided March 3, 1989 (Docket No. 99743). The Supreme Court affirmed all the convictions except the one for felony murder, which was reversed on the ground that the trial court had erred in instructing the jury with regard to the intent element of aiding and abetting. 437 Mich 1021 (1991). On remand for retrial of the felony-murder charge, the prosecution moved in limine for the admission of evidence of the defendant's armed robbery conviction, arguing that collateral estoppel barred a redetermination of that offense and that the sole question for the jury was whether the defendant had aided and abetted the murder that occurred during the armed robbery. The court, George W. Crockett, III, J., denied the motion. The prosecution appealed by leave granted.

The Court of Appeals *held:*

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding. The doctrine, which originated in civil litigation, has been applied in criminal cases for reasons of judicial economy and expediency. However, a defendant's constitutional right to a trial by jury overrides any interest in judicial economy and efficiency that would result from the affirmative use of collateral estoppel in a subsequent criminal prosecution to establish facts pertaining to an essential element of the

REFERENCES

Am Jur 2d, Criminal Law §§ 324, 327; Jury § 21.

Modern status of doctrine of res judicata in criminal cases. 9 ALR3d 203.

charged offense. Such use of collateral estoppel would invade the jury's fact-finding and decision-making functions.

In this case, the trial court did not err in denying the prosecution's motion in limine. The defendant's right to a trial by jury entitles him at retrial to have the jury decide the facts and determine his guilt or innocence regarding all the elements of felony murder.

Affirmed.

GRIFFIN, P.J., dissenting, stated that collateral estoppel does not apply in this case because the retrial is not a new and independent case but a continuation of the same cause of action, and that res judicata bars the defendant from relitigating the issue of his guilt of armed robbery.

CRIMINAL LAW — COLLATERAL ESTOPPEL — FELONY MURDER — RETRI-
ALS — JURY TRIALS.

A defendant's constitutional right to a trial by a jury in a retrial for felony murder, but not for the underlying felony, precludes use of collateral estoppel by the prosecutor as a means of establishing the underlying felony by introduction of evidence of conviction of that felony; the defendant is entitled to a determination of guilt or innocence based on the jury's consideration of the facts regarding all the elements of felony murder (US Const, art III, § 2, cl 3; Ams VI, XIV).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, for the people.

*Angela Palmieri,* for the defendant.

Before: GRIFFIN, P.J., and SHEPHERD and FITZ-GERALD, JJ.

SHEPHERD, J. After a remand by the Supreme Court for retrial on the charge of felony murder, the prosecution appeals the trial court's denial of its motion in limine that, on retrial, the jury be instructed that the element of armed robbery necessary to establish felony murder had already been proven and that it was not an issue for the jury to decide. We affirm.

I

Following a prior jury trial, defendant was con-
victed of first-degree murder, MCL 750.316; MSA
28.548, two counts of assault with intent to mur-
der, MCL 750.83; MSA 28.278, two counts of first-
degree criminal sexual conduct, MCL 750.520b(1);
MSA 28.788(2)(1), kidnapping, MCL 750.349; MSA
28.581, and armed robbery, MCL 750.529; MSA
28.797. The Court of Appeals, in an unpublished
opinion per curiam, decided March 3, 1989 (Docket
No. 99743), affirmed. The Supreme Court reversed
defendant's conviction of felony murder, but af-
firmed his convictions in all other respects. *People
v Goss,* 437 Mich 1021 (1991).

The prosecution argues that the trial court erred
in failing to grant its motion in limine because the
doctrine of collateral estoppel bars relitigation of
the underlying charge of armed robbery. Accord-
ing to the prosecution, when this case is retried,
the jury should be instructed that defendant has
been found guilty of the underlying felony, and
that its responsibility is only to determine whether
he is also guilty of aiding and abetting the murder
that occurred during the commission of the felony.
We disagree.

II

Collateral estoppel precludes relitigation of an
issue in a subsequent, different cause of action
between the same parties when the prior proceed-
ing culminated in a valid final judgment and the
issue was actually and necessarily determined in
the prior proceeding. *People v Gates,* 434 Mich
146, 154; 452 NW2d 627 (1990), cert den 497 US
1004 (1990).

Although the doctrine of collateral estoppel has

been applied to criminal cases in Michigan[1] as well as in other jurisdictions,[2] the issue whether the prosecution may use collateral estoppel affirmatively to establish facts relating to an essential element of an offense in a subsequent proceeding

---

[1] In *Gates, supra* at 154-155, the Court noted that although collateral estoppel usually applies where there are two civil proceedings, the principle is also applicable to cases of "cross-over estoppel," which involve issue preclusion in a civil proceeding following a criminal proceeding or vice versa. In *Gates,* the Court found that collateral estoppel did not bar the subsequent prosecution of the defendant for second-degree criminal sexual conduct because, even assuming that the issue of the defendant's alleged sexual abuse of his daughter was fully litigated, the jury, in returning a verdict of no jurisdiction in the prior probate court child protective proceeding, did not necessarily determine that the defendant was not guilty of the offense charged; see also *People v Gray,* 393 Mich 1, 4; 222 NW2d 515 (1974), where the Supreme Court held that the determination of involuntariness at a hearing held pursuant to *People v Walker,* 374 Mich 331; 132 NW2d 87 (1965), was a final factual determination binding upon the prosecution for purposes of collateral estoppel; *In re Forfeiture of $1,159,420,* 194 Mich App 134, 145-146; 486 NW2d 326 (1992), where a panel of this Court recently concluded in a case of "crossover estoppel" that the principle of collateral estoppel barred relitigation in a forfeiture proceeding regarding the issue whether a federal district court had erred in determining the validity of the search warrant in the prior criminal prosecution; *People v Schneider,* 171 Mich App 82, 86; 429 NW2d 845 (1988), where this Court held that litigation of a second charge of operating a motor vehicle while under the influence of intoxicating liquor, third offense, was not precluded by the doctrine of collateral estoppel; *People v Davenport,* 46 Mich App 579, 582; 208 NW2d 562 (1973), rev'd on other grounds 51 Mich App 484; 215 NW2d 702 (1974), where this Court stated that although the principle of collateral estoppel was not applicable to that case, the principle was applicable to civil as well as criminal cases.

[2] See 9 ALR3d 203, § 9, p 241; 1 Wharton's Criminal Law (14th ed), § 72, pp 355-359 states:

Collateral estoppel, a branch of the broader principle of res judicata, is applicable in criminal prosecutions and bars relitigation between the same parties of an issue determined at a prior trial. Although the prior prosecution may have resulted in a conviction, it will ordinarily have been an acquittal.

In *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970), the Supreme Court recognized the generally accepted view of federal courts that collateral estoppel is available to a defendant as a defense in a criminal trial and derives from the Fifth Amendment's guarantee against double jeopardy. *United States v Bruno,* 333 F Supp 570, 575-576 (ED Pa, 1971).

of a criminal case appears to be one of first impression.

As various courts have observed, the affirmative use of collateral estoppel by the prosecution in a criminal case does not rest upon any constitutional mandate. *State v Ingenito,* 87 NJ 204, 209; 432 A2d 912 (1981). The doctrine, which originated in civil litigation, has been applied in criminal cases for reasons of judicial economy and expediency. *State v Plevy,* 52 NY2d 58, 64; 436 NYS2d 224; 417 NE2d 518 (1980). As the Court of Appeals of New York stated, "the doctrine, however, is not to be rigidly or mechanically applied and must on occasion, yield to more fundamental concerns." *Id.*

A review of other jurisdictions reveals that courts are generally reluctant to support the affirmative use of collateral estoppel to establish facts relating to the essential element of an offense against a defendant in a subsequent criminal proceeding.

In *United States v Rangel-Perez,* 179 F Supp 619, 625 (SD Cal, 1959), a watershed case in which a federal district court reviewed the jurisprudence of collateral estoppel in criminal cases at some length, the court observed that the majority of reported cases, both federal and state, viewed collateral estoppel as unavailable to the prosecutor. *Id.* at 622-625. Nonetheless, it held that collateral estoppel was applicable to the issue of alienage where a prior conviction of illegal entry into the United States necessarily adjudicated that issue. *Id.* at 626-627. The court explained:

> The wise public policy underlying the doctrine, and common-sense judicial administration as well, combine to advocate application of collateral estoppel against a defendant in a criminal case, at least as to certain issues, where such issues have been

in fact litigated and necessarily adjudicated in a prior criminal case between the identical prosecutor and the identical accused. Issues as to status, for example, would seem most appropriate for application of the doctrine. [*Id.* at 625.]

In *Pena-Cabanillas v United States,* 394 F2d 785, 787 (CA 9, 1968), the Ninth Circuit Court of Appeals adopted the holding of *Rangel-Perez,* stating that where the issue of a defendant's alienage was necessarily litigated fully in a criminal case, collateral estoppel may be applied to the issue in a later criminal case.

Subsequently, in *United States v Colacurcio,* 514 F2d 1 (CA 9, 1975), the Ninth Circuit Court of Appeals extended the application of collateral estoppel beyond the issue of status. In that case, the defendant was convicted of conspiring to promote illegal gambling. Facts established at that trial, concerning money received from his coconspirator's illegal operations, were judged admissible as proven in the defendant's later trial for federal income tax evasion, and the jury was so instructed. *Id.* at 2-3. The appellate court upheld that decision, saying:

Appellant argues that if *Rangel-Perez* and *Pena-Cabanillas* are interpreted to mean that the court may instruct the jury on facts which have been directly and necessarily adjudicated in a prior trial without production of any further evidence, their holding would ignore the defendant's constitutional right to be confronted with the witnesses against him and his right to have all the facts decided by the jury. We cannot agree. With respect to all facts which were essential to a determination of the charges against appellant in the 1971 conspiracy trial, the appellant had the opportunity to cross-examine all witnesses against him and was accorded his constitutional right to trial by

jury. While *Rangel-Perez* and *Pena-Cabanillas* are limited to the question of defendant's status, we conclude that the rationale of those cases is equally applicable to those facts actually decided which were essential to the judgment in the prior case. [*Id.* at 5-6.]

See also *United States v Bejar-Matrecios,* 618 F2d 81 (CA 9, 1980), another case involving alienage, which confirmed that a conviction based on a guilty plea, like a trial-based conviction, estopped a defendant from relitigating a common material fact in subsequent proceedings. *Bejar-Matrecios* cited an earlier Eighth Circuit case, again involving the issue of alienage, which came to the same conclusion, *Hernandez-Uribe v United States,* 515 F2d 20 (CA 8, 1975), cert den 423 US 1057 (1976). See also *Otherson v Dep't of Justice, Immigration & Naturalization Service,* 228 US App DC 481; 711 F2d 267 (1983), and *Howard v Immigration & Naturalization Service,* 930 F2d 432 (CA 5, 1991), which held that facts adjudicated in a prior criminal conviction could not be recontested in a later administrative proceeding.

However, federal courts have also opposed the use of collateral estoppel against a defendant in a subsequent criminal proceeding. In *United States v Carlisi,* 32 F Supp 479, 482 (ED NY, 1940), the court stated:

In transplanting the doctrine [of res judicata to criminal law], the requirement of mutuality had to be abandoned. A prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so, because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt.

This view was more recently echoed in *United*

*States v Bruno,* 333 F Supp 570, 576 (ED Pa, 1986), citing *United States v De Angelo,* 138 F2d 466 (CA 3, 1943):

> The application of collateral estoppel to criminal cases has been favored despite the fact that there can never be mutuality between the prosecution and the defense. An accused is always constitutionally entitled to a trial de novo of the facts alleged and in support of each offense charged against him, and collateral estoppel is available as a defense, even though it can never be raised offensively by the prosecution.

See also *Bejar-Matrecios, supra* at 83, n 2, where the court, in allowing the application of collateral estoppel in an alienage case, nonetheless observed:

> Because of its potential implication for a defendant's rights to confrontation and jury trial, other courts have been reluctant to decide whether the doctrine of collateral estoppel is appropriate in successive criminal proceedings. *See United States v Day,* 591 F2d 861, 892 n 23 (DC Cir 1979) (Robinson, J., dissenting in part); *United States v Cheung Kin Ping,* 555 F2d 1069, 1076 (2d Cir 1977).

Further, state courts have generally refused to extend the doctrine when fundamental constitutional rights are implicated. In *Ingenito, supra,* the New Jersey Supreme Court held that collateral estoppel, when so used, violates the right to trial by jury. As the court observed:

> Most of these cases [permitting the affirmative use of collateral estoppel by the prosecution] are limited to instances where the issue foreclosed involved status or did not go to the core of the crime charged or where the proceeding in which estoppel was invoked did not involve a jury trial.

Other cases cited . . . date back almost a century or more [citing *Commonwealth v Ellis,* 160 Mass 165; 35 NE 773 (1893) *et al*]. To the extent that the analyses or holding of any of these cases are particularly relevant to the factual posture of this case, we do not believe they adequately or correctly treat the issue of collateral estoppel as violative of the jury right and find them to be unpersuasive authority. [87 NJ 217, n 7.]

Similarly, in *Plevy, supra,* the Court of Appeals of New York held that the doctrine of collateral estoppel did not bar the defendant from disputing a consent issue in a pretrial suppression hearing before the robbery case because the constitutional right of an accused to testify was superior to collateral estoppel. Another New York court, in deciding not to apply the doctrine against the defendant in a perjury case, observed:

The case law casts grave doubts on such full application of the doctrine of collateral estoppel in criminal cases. [*People v Jacobs,* 149 AD2d 112, 115; 544 NYS2d 1011 (1989).]

Recently, in *State v Johnson,* 134 NH 498, 501; 594 A2d 1288 (1991), the Supreme Court of New Hampshire in another perjury case stated:

[T]his court has never collaterally estopped a criminal defendant from contesting an essential element of the charge against him or her by virtue of a prior conviction for a separate offense. Our more recent decisions indicate the inherent difficulty involved in applying a tool which originated in the civil law to the criminal setting.

But see *State v Ford,* 65 Cal 2d 41; 52 Cal Rptr 228; 416 P2d 132 (1966), cert den 385 US 1018 (1967), where the Supreme Court of California in a

felony-murder case held that the doctrine of res judicata did not bar the trial court's instructions that the defendant had been convicted of various felonies and that the jury was to decide only whether the homicide was committed during the commission of any or all of these felonies and whether the defendant possessed the requisite intent to commit the various felonies at the time he committed the homicide. Courts also have applied collateral estoppel against defendants with respect to issues of suppression and probable cause, see, e.g., *United States v LeVasseur*, 699 F Supp 965, 980 (D Mass, 1988); *Duran v Melton*, 108 Misc 2d 120; 437 NYS2d 49 (1981); *State v Scott*, 93 Misc 2d 1074; 405 NYS2d 169 (1978).

III

After reviewing the case law of other jurisdictions, we are persuaded that a defendant's constitutional right to a trial by jury precludes the application of collateral estoppel to establish facts relating to an essential element in a subsequent criminal prosecution.

In so holding, we adopt the reasoning set forth by the Supreme Court of New Jersey in *Ingenito, supra.* There, the court, after noting that the right to trial by jury is guaranteed in two separate sections of the United States Constitution, art III, § 2, cl 3 and Am VI, and has been made applicable to the states through the Fourteenth Amendment, observed that "[m]any strands are interwoven to make up the composite guarantee which constitutes the right to trial by jury in a criminal case." 87 NJ 211.

One principal strand is that the jury has the sole responsibility to decide the facts in light of the credibility of the witnesses and the weight and

value of the evidence. In addition, the jury has the responsibility to find the truth and decide the ultimate question of guilt or innocence in view of the evidence presented at trial. The court noted that the responsibility of the jury in its dual roles as factfinder and ultimate decision maker "is so pronounced and preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant." 87 NJ 211-212. Insofar as the offensive use of collateral estoppel against a defendant invades the fact-finding and ultimate decisional functions of the jury, a defendant is denied his constitutional right to trial by jury.

Alongside the jury's fact-finding and decision-making responsibilities is the additional requirement that a defendant be presumed innocent until proven guilty beyond a reasonable doubt. As noted in *Ingenito, supra* at 213, the United States Supreme Court has stated on various occasions that "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v Williams,* 425 US 501, 503; 96 S Ct 1691; 48 L Ed 2d 126 (1976), reh den 426 US 954 (1976); *Taylor v Kentucky,* 436 US 478, 479; 98 S Ct 1930; 56 L Ed 2d 468 (1978). While the presumption of innocence is often regarded as a due process right, "its strictures are intertwined with the substantive right of trial by jury itself." *Ingenito, supra* at 214.

Accordingly, the Supreme Court of New Jersey concluded:

> [C]ollateral estoppel, applied affirmatively against a defendant in a criminal prosecution, violates the right to trial by jury in that not only does it seriously hobble the jury in its quest for truth by removing significant facts from the delib-

erative process, but it constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations. Hence, the collateral estoppel doctrine, which serves to establish virtually conclusive evidence of a *critical element of criminal guilt*, cripples the jury in the discharge of its essential responsibilities contrary to the constitutional guarantees of the jury right in a criminal trial. [87 NJ 216-217.]

In holding that a defendant's constitutional right to a trial by jury overrides the affirmative use of collateral estoppel to establish facts pertaining to an essential element of an offense in a subsequent criminal prosecution, we explicitly reject the use of a balancing test under the rubric of due process in making this determination. See *State v Johnson, supra* at 503; *Plevy, supra* at 64-66. It is inappropriate to determine the applicability of collateral estoppel case by case in terms of a balancing test weighing competing policy considerations because more is at stake than just a defendant's right to due process requiring the state to prove, beyond a reasonable doubt, every element of the charge against him. Accordingly, in the clash between the principle of collateral estoppel and the constitutional right to trial by jury, collateral estoppel must give way to permit a defendant's unfettered exercise of the constitutional right to trial by jury.

Applying this rule to the present case, the prosecution is thus barred from introducing defendant's conviction of armed robbery to establish the underlying felony in his retrial for felony murder. Even though the instant case satisfies the require-

ments of collateral estoppel,[3] defendant's constitutional right to trial by jury entitles him at retrial to have the new jury decide the facts and determine his guilt or innocence regarding all the elements of felony murder. The application of collateral estoppel in this case must yield to this fundamental constitutional right, even if, as the prosecution contends, proving the armed robbery element may be considered "to waste valuable judicial resources in terms of time and orderliness" and even if the trial court can instruct the jury not to consider defendants conviction for armed robbery as evidence that he had the requisite intent for felony murder. Because questions of judicial economy and efficiency are subordinate to the fundamental constitutional rights of a criminal defendant, we reject the prosecutor's claim that collateral estoppel bars relitigation of the underlying charge of armed robbery.

Affirmed.

FITZGERALD, J., concurred.

GRIFFIN, P.J. *(dissenting)*. This is the continuation of the case *People v Goss,* (Recorder's Court docket No. 86-007856). Following a jury trial in the Detroit Recorder's Court, defendant was convicted of first-degree felony murder, MCL 750.316; MSA 28.548, armed robbery, MCL 750.529; MSA 28.797, two counts of assault with intent to commit mur-

[3] In view of the five factors listed in *People v Schneider,* 171 Mich App 86 (see n 1, *supra*), the principle of collateral estoppel applies to this case: (1) the prosecutor and the defendant, the parties involved in the original robbery conviction, are the same parties that would be involved in the retrial of the robbery charge; (2) the second cause of action for felony murder differs from the first cause of action for armed robbery; (3) the same issue is involved in the present felony-murder charge because the robbery conviction obtained in the first trial is for the same robbery that is alleged as the underlying felony in the retrial; (4) the underlying robbery conviction was actually litigated in the first trial; and (5) there is mutuality of estoppel.

der, MCL 750.83; MSA 28.278, two counts of first-
degree criminal sexual conduct, MCL 750.520b(1);
MSA 28.788(2)(1), and kidnapping, MCL 750.349;
MSA 28.581. On appeal, this Court, in an unpub-
lished opinion per curiam, decided March 3, 1989
(Docket No. 99743), affirmed all of defendant's
convictions. On further appeal, the Supreme Court
reversed defendant's conviction of first-degree fel-
ony murder on the basis of instructional error. A
new trial was ordered for the charge of first-degree
felony murder. The Supreme Court's order states
that "[i]n all other respects the judgments of the
Court of Appeals and the Recorder's Court are
affirmed." *People v Goss,* 437 Mich 1021 (1991).

After remand from the Supreme Court, the issue
is whether defendant may relitigate his guilt of
the underlying felony of armed robbery or whether
the jury will be instructed that the underlying
felony has already been proven. The Recorder's
Court ruled that at retrial there could be no
mention of defendant's armed robbery conviction.
The court further ruled that all the elements of
the crime of felony murder, including defendant's
guilt of the underlying felony, must be proved
anew by the prosecutor. I would apply the doctrine
of res judicata and hold that defendant is barred
from relitigating his guilt of the underlying felony.
Accordingly, I respectfully dissent.

I

The doctrine of res judicata applies to criminal
proceedings. *People v Riley,* 72 Mich App 299; 249
NW2d 397 (1976); *People v Sharp,* 9 Mich App 34,
39; 155 NW2d 719 (1967). "The doctrine of res
judicata is to be distinguished from that of collat-
eral estoppel." *People v Schneider,* 171 Mich App
82, 86; 429 NW2d 845 (1988).

The majority mischaracterizes the issue as one of collateral estoppel rather than res judicata. See, generally, *People v Gates,* 434 Mich 146, 154, n 7; 452 NW2d 627 (1990), and *People v Johnson,* 191 Mich App 222, 224; 477 NW2d 426 (1991). In the present case, the bar to relitigation is not collateral to a different cause of action. Rather, the bar arises from a prior adjudication in this case.[1] For the most part, the authorities relied upon by the majority are simply not applicable to the present issue. Cf. anno: *Modern status of doctrine of res judicata in criminal cases,* 9 ALR3d 203.

The majority concludes that defendant's constitutional rights to a jury trial and to a presumption of innocence would be violated if on retrial the jury is instructed that defendant stands convicted of the underlying felony. I disagree. The facts are that defendant *has* had a trial by jury on the charge of armed robbery and *has* been convicted. Further, his conviction has been affirmed by this Court and the Michigan Supreme Court. Under these circumstances, "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera v Collins,* 506 US —; 113 S Ct 853; 122 L Ed 2d 203, 216 (1993).

II

In *People v Ford,* 65 Cal 2d 41; 52 Cal Rptr 228; 416 P2d 132 (1966), cert den 385 US 1018 (1967), the California Supreme Court addressed the identical res judicata issue involved in this appeal. In *Ford,* the jury in the defendant's first trial convicted him of first-degree felony murder, burglary,

---

[1] A retrial on remand is not a "new and independent case" but rather a continuation of the same cause of action. *Kepner v United States,* 195 US 100, 134; 24 S Ct 797; 49 L Ed 114 (1904) (Holmes, J., dissenting).

robbery, kidnapping, and possession of a concealed weapon. On appeal, the defendant's conviction of first-degree felony murder was reversed because of instructional error and the matter was remanded for retrial. The defendant's burglary conviction was modified while his other felony convictions were affirmed. At the retrial for felony murder, the defendant argued that it was improper for the jury to be instructed that he stood convicted of robbery, kidnapping, and possession of a concealed weapon. The California Supreme Court disagreed:

He further claims that the instructions were improper because they told the jury that he had been convicted of robbery, kidnapping and possession of a concealable weapon by an ex-felon, and reserved for the jury only the questions whether the homicide was perpetrated during the commission of any or all of these felonies, and whether he possessed the intent requisite to the various felonies at the time of the commission of the homicide.

\* \* \*

It is obvious that the felony convictions obtained at the first trial substantially affected the prosecution and defense upon retrial of the murder charge. The burden upon the prosecution was lessened to the extent that it was permitted the benefit of the felony-murder rule without the necessity of having to prove the elements of the respective felonies. Nor was the defense permitted to dispute the fact that the necessary elements of the felonies had been conclusively found. These facts do not, however, compel the conclusion urged upon us by defendant.

The doctrine of res judicata applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined though the offenses be different. (*Sealfon v United States*, 332 US 575, 578; 68 S Ct 237;

92 L Ed 180 [1948]; see *Teitelbaum Furs, Inc v Dominion Ins Co, Ltd,* 58 Cal 2d 601, 606; 25 Cal Rptr 559; 375 P2d 439 [1962]). Thus where a defendant is tried on multiple counts of a single information, each count being considered as a separate and distinct offense, the doctrine of res judicata operates to preclude the relitigation of issues finally determined upon retrial of only one count. (See *People v Beltran,* 94 Cal App 2d 197, 205; 210 P2d 238 [1949], and cases cited and discussed therein.) It follows that the doctrine of res judicata justifies instructions, where relevant, that a defendant has been found guilty of crimes finally adjudicated which are charged as elements in another charge or charges then in the process of being retried. Accordingly, it was not error for the trial court to give appropriate instructions that defendant had been convicted of the various felonies, and that if they found that defendant's commission of such felonies was conjoined with his commission of the homicide, they might predicate their verdict on the felony-murder rule articulated in Penal Code section 189. [65 Cal 2d 50-51.]

I find *Ford* persuasive regarding the res judicata issue involved in the present appeal. The constitutional concerns expressed by the majority are not implicated in the context of the present case.

### III

I would reverse the denial of the people's motion in limine and remand with instructions that the jury is to be instructed that defendant stands convicted of armed robbery. The doctrine of res judicata applies and bars defendant from relitigating the armed robbery element of first-degree felony murder.