[No. B078255. Second Dist., Div. Seven. Apr. 15, 1994.]

ABRAHAM GUTIERREZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

H. Russell Halpern for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, Patrick D. Moran and Brent Riggs, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**LILLIE, P. J.**—Petitioner, defendant in a criminal prosecution for murder of Sandra Zarate, challenges an order of the trial court barring him from litigating the issues of identity and intent on the ground that a prior final judgment of conviction for attempted murder of Zarate[1] collaterally estops him from doing so, leaving for the jury only the issue of whether petitioner's shooting of Zarate caused her death.

---

[1] Zarate was shot in the head in June 1990; at the time of petitioner's trial on various counts, including attempted murder, Zarate was hospitalized in a coma; she died in January 1993. Petitioner was convicted of attempted murder in January 1991, which conviction was upheld on appeal in *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729 [13 Cal.Rptr.2d 464].

Petitioner contends that the prosecution's assertion of the doctrine of collateral estoppel denies him his constitutional right to jury trial and to due process of law as guaranteed by both the federal and state Constitutions.

FACTUAL AND PROCEDURAL BACKGROUND

According to our opinion on petitioner's prior appeal of his attempted murder conviction, petitioner was at a friend's house drinking beer with 30 to 40 of his acquaintances when Zarate and 3 others drove by; petitioner and his friends threw beer cans and shouted gang slogans as the car passed; petitioner pursued the car on a motorcycle; while a second person drove the motorcycle, petitioner sat on the back with a gun and shot Zarate in the head.

Petitioner's defense was mistaken identity; two defense witnesses testified that petitioner was not the shooter. The jury found petitioner guilty of discharging a gun into an occupied motor vehicle (count 2) and attempted murder (count 1), but found the attempt to commit murder was not willful, deliberate, and premeditated; the jury also found true the allegations that petitioner personally used a firearm and intentionally and personally inflicted great bodily injury on Zarate. Petitioner was sentenced to state prison for a total term of 18 years and 8 months. The judgment was affirmed on appeal in *People* v. *Gutierrez, supra,* 10 Cal.App.4th 1729.

After Zarate's death in January 1993, the People filed in July 1993 an information charging petitioner with murder. At a pretrial conference on August 4, 1993, the prosecutor informed the court that the People would be seeking a jury instruction that the only issue to be decided is whether Zarate's death was caused by a gunshot wound to her head, as the issue of the identity of the shooter had been established by the prior judgment and the doctrine of collateral estoppel barred petitioner from relitigating that issue. On August 16, 1993, the People filed a written motion re collateral estoppel, seeking to preclude petitioner from litigating the issues of his identity as the shooter and his intent to kill. The motion argued that the principle of collateral estoppel justified the court "in instructing the jury that [petitioner] was found guilty in a prior proceeding of inflicting great bodily harm upon Ms. Zarate as a result of discharging a firearm into an occupied motor vehicle, with the intent to kill her, and that said criminal conviction is an element of the present charge of second degree murder, which need not be relitigated." Petitioner filed written opposition to the motion, which was orally argued on August 20, 1993.

In granting the prosecution's motion, the court stated that it read the verdict forms of the prior attempted murder case, and "I've seen the findings

that [the jury] made, and . . . the jury has decided these issues, that the defendant had express malice aforethought, that he did the shooting. The only issue is whether or not what he did caused the death. That's the way I see it. . . . [¶] . . . I'm ruling that the defendant is collaterally estopped from relitigating the issue of whether he caused great bodily harm to Miss Zarate as a result of discharging a firearm at an occupied motor vehicle with the intent to kill Miss Zarate."

Petitioner filed timely petition for writ of prohibition challenging the August 20, 1993, order. After we denied the petition, petitioner sought review in the Supreme Court, which granted review and transferred the matter to us with directions to vacate our order denying prohibition and to issue an alternative writ. We vacated our prior order and issued alternative writ of prohibition; real party in interest filed a return and answer; petitioner filed a reply to return; oral argument has been had thereon.

I

### GENERAL PRINCIPLES OF COLLATERAL ESTOPPEL

■ "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995], fn. omitted.)

■ "Even assuming all the threshold requirements are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. [Citation.] As the United States Supreme Court has stated, 'the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality.' (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 444 [25 L.Ed.2d 469, 475, 90 S.Ct. 1189] . . . .)" (*Lucido* v. *Superior Court, supra,* 51 Cal.3d at pp. 342-343, fn. omitted.) Thus, collateral estoppel is not an inflexible, universally applicable principle; policy considerations may limit its use where the limitation on

relitigation underpinnings of the doctrine are outweighed by other factors. (*Id.* at p. 343.)

"Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 343.)

In deciding whether the doctrine is applicable in a particular situation a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. (*People v. Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622].)

The instant case must be distinguished from those situations in which a criminal defendant invokes collateral estoppel as a defense or as a bar to a subsequent prosecution.[2] Rather, the instant case involves the assertion of the doctrine by the prosecution to limit petitioner's ability to contest at his trial for murder those issues which were adjudicated against him by the jury on his prior trial and conviction for attempted murder. Although the parties do not bring to our attention any California case on all fours with this one, they discuss cases in our courts and in other jurisdictions wherein the prosecution sought to invoke the doctrine of collateral estoppel against a criminal defendant. Because the United States Supreme Court has adverted to the mutuality aspect of collateral estoppel in criminal cases, even if only in dictum, we believe a discussion of this issue is helpful in developing a conceptual framework to address the issue presented in this case. ■ "The principles articulated in federal courts concerning the doctrine of collateral estoppel are equally pertinent to state court matters." (*People v. Nunez* (1986) 183 Cal.App.3d 214, 224 [228 Cal.Rptr. 64].)

---

[2]For example, in *Ashe v. Swenson, supra,* 397 U.S. 436, 445-446 [25 L.Ed.2d 469, 476-477, 90 S.Ct. 1189], wherein a defendant was acquitted of robbery of one of several victims and then charged with robbery of another victim, the court held that the doctrine of collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy" (*id.* at p. 445 [25 L.Ed.2d at p. 476]), and ". . . the State could not present the same or different identification evidence in a second prosecution for the robbery . . . in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." (*Id.* at p. 446 [25 L.Ed.2d at p. 477].) The court in *Ashe* also found that the jury in the first trial had determined by its verdict that the defendant was not one of the robbers. (*Ibid.*)

Petitioner herein does not contend the doctrine of collateral estoppel or double jeopardy bars his prosecution for murder. Our decision in *People v. Bivens* (1991) 231 Cal.App.3d 653 [282 Cal.Rptr. 438], supports the conclusion that his prosecution for murder is not barred because the victim had not died at the time of the prosecution for attempted murder.

II

MUTUALITY REQUIREMENT

In *United States* v. *Carlisi* (E.D.N.Y. 1940) 32 F.Supp. 479, the court quoted at length from a "very interesting, instructive, and well-considered editorial on the subject, 'Res Judicata With Respect to Criminal Judgments' " (*id.* at p. 482), written by an attorney, Harry G. Anderson, and appearing in the New York Law Journal in December 1939: " 'The courts have frequently referred to the principle of res judicata in criminal cases. In transplanting the doctrine, however, to criminal law the requirement of mutuality had to be abandoned. A prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt. *People* v. *Kief,* 126 N.Y. 661, 663, [27 N.E. 556]; *People* v. *Walker,* 198 N.Y. 329, 334, [91 N.E. 806]. For this reason doubt has been expressed as to whether the doctrine known to the civil law as res judicata is applicable to criminal cases. [Citation.] [¶] In a more precise sense the rule of res judicata as applied in civil law cannot be said to have an exact counterpart in criminal law. There is, however, a rule of estoppel in criminal law akin to res judicata. As thus used it is a "rule of evidence" which accords to the accused the right to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial.' " (32 F.Supp. 479, 482.)

Citing *Carlisi,* the court in *United States* v. *De Angelo* (3d Cir. 1943) 138 F.2d 466, concluded that although a prior judgment of acquittal on related matters can be asserted by the defendant in a subsequent prosecution, there was no "requirement of mutuality with respect to a criminal judgment's conclusiveness. An accused is constitutionally entitled to a trial de novo of the facts alleged and offered in support of each offense charged against him and to a jury's independent finding with respect thereto." (*Id.* at p. 468.)

The foregoing language was cited with approval by the court in *People* v. *Beltran* (1949) 94 Cal.App.2d 197, 205 [210 P.2d 238]. In *Beltran,* the defendant unsuccessfully argued on appeal that his prior acquittal on a charge of kidnapping for purpose of robbery was res judicata on a second trial for robbery; the court concluded that there was "nothing in the record from which it can be said that by the verdict of acquittal of the kidnaping charge the jury found that [the defendant] had no knowledge of the plan to commit robbery." (*Id.* at p. 207.)

Although the lead opinion in *Ashe* v. *Swenson, supra,* 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189] (see fn. 2, *ante*), alluded in passing to the "lack

of 'mutuality' " in the application of the collateral estoppel doctrine in criminal cases (*id.*, at p. 443 [25 L.Ed.2d at p. 475]), the issue was discussed in the dissenting opinion by Chief Justice Burger: "Very properly, in criminal cases, finality and conservation of private, public, and judicial resources are lesser values than in civil litigation. Also, courts that have applied the collateral-estoppel concept to criminal actions would certainly not apply [it to] *both* parties, as is true in civil cases, *i.e.*, here, if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial." (*Id.* at pp. 464-465 [25 L.Ed.2d at p. 487] (dis. opn. of Burger, C. J.).)

A year after *Ashe*, a similar factual situation was before the court in *Simpson* v. *Florida* (1971) 403 U.S. 384 [29 L.Ed.2d 549, 91 S.Ct. 1801]. In *Simpson*, the defendant was convicted of armed robbery of a store manager; after that conviction was reversed on appeal for instructional error, the defendant was retried and acquitted; the defendant was then charged with robbing the store's customer; defendant's motion to quash the information on double jeopardy grounds was overruled and he was convicted by a jury of armed robbery. The Supreme Court of Florida declined review, allowing to stand an appellate court decision that " 'appellant is estopped from contending without further proof that the State failed to prove the issue of his identity as one of the robbers on . . . the second trial inasmuch as on the first trial a jury had found above and beyond a reasonable doubt that appellant was a participant in the robbery.' " (*Id.* at p. 386 [29 L.Ed.2d at p. 552].) The court's lead *per curiam* opinion characterized the Florida appellate court's resolution of the issue as "plainly not tenable," and continued to explain that "Indeed, in *Ashe* itself, we specifically noted that 'mutuality' was not an ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments upon the states. [Citation.] It is clear that Florida could not have retried petitioner a third time on the charge of robbing the store manager because it had previously secured a jury verdict of guilty as well as one of acquittal. And, had the second trial never occurred, the prosecutor could not, while trying the case under review, have laid the first jury verdict before the trial judge and demanded an instruction to the jury that, as a matter of law, petitioner was one of the armed robbers in the store that night." (*Ibid.*)[3]

---

[3]More recently, in *United States* v. *Dixon* (1993) 509 U.S. __ [125 L.Ed.2d 556, 113 S.Ct. 2849], the court addressed the issue of whether the double jeopardy clause bars prosecution on a substantive criminal charge based on the same conduct for which the defendant had been held in criminal contempt of court. Although the collateral estoppel issue was not raised therein (509 U.S. at p. __ [125 L.Ed.2d at p. 573]), a footnote in the plurality opinion (by Justice Scalia, joined by three other justices) stated: "Under *Ashe* v. *Swenson* . . . , an acquittal in the first prosecution might well bar litigation of certain facts essential to the

Despite this seemingly absolute language barring the prosecution from asserting the collateral estoppel doctrine against the defendant on a subsequent prosecution, the language remains dictum. Apparently, the United States Supreme Court has not yet squarely addressed the issue or offered any theoretical underpinning for such a rule. In the absence of a definitive resolution of the issue of mutuality by the United States Supreme Court, some lower courts have developed justifications for the prosecution's assertion of the doctrine against the defendant in cases involving issues of paternity and citizenship status. Upon a more detailed discussion of these cases, it will become clear why we find these cases distinguishable from the instant case.

### III

#### COLLATERAL ESTOPPEL ASSERTED BY PROSECUTION, GRANTED

In a case decided well before *Ashe* v. *Swenson*, the court in *People* v. *Majado* (1937) 22 Cal.App.2d 323 [70 P.2d 1015], held that ". . . a conviction and judgment on a charge of failing to provide for an illegitimate child is conclusive on the issue of parentage and prevents the defendant from having the same issue retried in a subsequent prosecution on a similar charge in the same court and between the same parties, when the information in the first action has been dismissed after satisfactory completion of probation." (*Id.* at p. 324.) The court explained: "The crime here . . . is a continuing one, if the appellant continues to fail to care for the child. If the purpose of probation fails and he continues to repeat the offense his very failure to take advantage of the opportunity for reformation offered him by probation would, under his theory, place him in a much better position than if probation was never granted. If it had not been granted in the first place the fact of parentage would have been established for future cases. But under his view of the statute [Penal Code section 1203.4] this result is defeated by his failure to keep his implied promise to reform and he can, if probation is granted in successive cases, put the People to the expense of many trials before this two-year-old child reaches its majority, in each of which the fact of parentage must again be established. Eventually, he might secure a jury which would find that he was not the father of the child and, since that judgment could not be set aside, we would then have the same fact judicially determined both ways." (*Id.* at pp. 326-327.)

In *United States* v. *Rangel-Perez* (S.D.Cal. 1959) 179 F.Supp. 619, the defendant was convicted after trial in 1943 of illegal entry into the United

second one—though a conviction in the first prosecution would not excuse the Government from proving the same facts the second time." (509 U.S. at p. ___, fn. 15 [125 L.Ed.2d at p. 577].)

States and deported to Mexico; in 1957, defendant was found in California and again charged with illegal entry; the prosecution invoked the doctrine of collateral estoppel to obviate another trial of the nationality-status issue, whereas the defendant moved to strike all evidence of the 1943 adjudication of his alienage and asserted he was entitled to a trial de novo as to each element of the charged offense. The court acknowledged that a "brief review of the reported cases which have come to my attention points up not only the fact that the decisions are in conflict, but also the fact that the majority lean toward acceptance of the view that the doctrine of collateral estoppel, while available to the accused as against the Government, is not available to the prosecutor in Federal criminal cases." (179 F.Supp. at p. 625.) However, the court, citing *Majado*, found the doctrine available to the government, permitting it to assert that the 1943 proceeding conclusively established that the defendant was an alien as of the date of that prior adjudication. The court noted that "Issues as to status, for example, would seem most appropriate for application of the doctrine—especially so as to such an unchanging and indeed unchangeable, status as that of natural parent and child, which was involved in *People* v. *Majado, supra,* 22 Cal.App.2d 323 . . . ." (179 F.Supp. at p. 625.) Although the court noted that nationality status can be and frequently is changed from that of alien to that of American citizen through the naturalization process, the defendant in the instant case advanced no such evidence; rather, in his prior trial and in the case at bar defendant advanced the claim that he was a born American citizen, a claim which he had already fully and fairly litigated in 1943. "In this situation it is proper to apply collateral estoppel in favor of the Government." (179 F.Supp. at p. 626.)

The court in *Rangel-Perez* supported its conclusion on the ground, similar to that advanced in *Majado*, that defendants should not be provided an incentive for repeat violations of the law. "If the issue of alienage were to be tried each time a defendant makes an entry into the United States, after once having been found by judicial determination to be an alien, there would be less to deter future entries than at the present. . . . [A] defendant would have an added incentive to enter again and again, knowing that a trial de novo on the issue of alienage would be forthcoming and that such trial might, on one occasion, result in a favorable verdict. The Government would be estopped by any unfavorable verdict, and accomplishment of the objectives of the immigration laws to discourage and effectively control the already difficult problem of illegal entries into this country would thus be weakened." (179 F.Supp. at p. 626.)

The instant case does not implicate any public policy involving deterrence of repeated violations of the law by petitioner. Accordingly, we do not find

the *Majado* or *Rangel-Perez* line of cases dispositive. Moreover, the federal circuits are not unanimous on the issue. "Because of its potential implication for a defendant's rights to confrontation and jury trial, other courts have been reluctant to decide whether the doctrine of collateral estoppel is appropriate in successive criminal proceedings. *See United States* v. *Day*, 591 F.2d 861, 892 n. 23 (D.C. Cir. 1979) (Robinson, J., dissenting in part); *United States* v. *Cheung Kin Ping*, 555 F.2d 1069, 1076 (2d Cir. 1977)." (*United States* v. *Bejar-Matrecios* (9th Cir. 1980) 618 F.2d 81, 83, fn. 2.)

We now turn to an examination of the cases, brought to our attention by the parties herein, in which the courts have held, on various theories, that the prosecution cannot invoke the doctrine of collateral estoppel against a defendant in a criminal case.

## IV

### COLLATERAL ESTOPPEL ASSERTED BY PROSECUTION, DENIED

In *State* v. *Stiefel* (Fla.Dist.Ct.App. 1972) 256 So.2d 581, the state appealed from an order dismissing an information charging defendant with manslaughter resulting from operation of a motor vehicle while intoxicated and with culpable negligence on double jeopardy grounds, as the defendant had suffered a prior conviction of drunk driving. The court held that the prior conviction was not a bar to the manslaughter charge on double jeopardy grounds, and the doctrine of collateral estoppel was simply inapplicable: "The doctrine cannot apply, however, when as here the issue has been resolved *against* the accused. This is so because if it were to be given any effect at all in such case the trial court in the subsequent prosecution could charge the jury, or consider as a matter of law, that such issue had been resolved as a true fact to the detriment of the accused. This would be impermissible of course, under due process considerations which assure an accused a jury trial on *all* issues relating to each element of a given criminal charge." (256 So.2d at p. 585, italics in original.) It is unclear whether the court in *Stiefel* was applying state or federal principles of due process or relying upon the right to jury trial.

The court clearly grounded its decision in *State* v. *Ingenito* (1981) 87 N.J. 204 [432 A.2d 912], on the state and federal right to jury trial. Defendant was charged with several weapons offenses; the charge of possession of a weapon by a convicted felon was severed from a count charging unlicensed transfer of a weapon. After trial of the latter charge, defendant was found guilty and a week later another jury tried defendant on the charge of possession of a weapon by a convicted felon. As to the element of being a

convicted felon, defendant stipulated that he had been convicted in 1961 for breaking and entering and larceny; to prove possession, the prosecution was permitted, over defense objection, to admit evidence of defendant's conviction for unlicensed transfer of the weapons. On appeal, defendant asserted that the prior conviction had been used as a collateral estoppel against him and that a criminal trial use of that doctrine against him was unconstitutional. The Supreme Court of New Jersey agreed with the defendant, holding that ". . . the use of defendant's prior conviction in the trial of this case constituted collateral estoppel against the defendant and impinged upon his constitutional right of trial by jury, *U.S. Const.*, Amend. VI, *N.J. Const.* (1947), Art. I, 9." (432 A.2d at p. 915.)

The court in *Ingenito* began its analysis by noting that the affirmative use of collateral estoppel against a defendant in a criminal prosecution is not predicated upon any constitutional mandate, while the right to jury trial is one of the most cherished rights of Anglo-American jurisprudence, and is a constitutional guarantee to be scrupulously protected from encroachment or impairment with respect to a criminal defendant. (432 A.2d at p. 915.) It then concluded that the application of collateral estoppel against a criminal defendant impairs the right to jury trial in several respects: (1) it invades the factfinding and ultimate decisional functions of the jury ("If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised" [*id.* at p. 916]), and (2) it conflicts with the presumption of innocence as to every element of a crime and impermissibly shifts the burden of proof to the defendant, in that it "constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations." (*Id.* at pp. 918-919.)

In a footnote, the court in *Ingenito* cited *People* v. *Majado, supra,* 22 Cal.App.2d 323, and *United States* v. *Rangel-Perez,* and acknowledged that "several recent cases have permitted the use of collateral estoppel, the jury right notwithstanding." (432 A.2d at p. 919, fn. 7.) "Most of these cases are limited to instances where the issue foreclosed involved status or did not go to the core of the crime charged or where the proceeding in which estoppel was invoked did not involve a jury trial. . . . To the extent that the analyses or holdings of any of these cases are particularly relevant to the factual posture of this case, we do not believe they adequately or correctly treat the issue of collateral estoppel as violative of the jury right and find them to be unpersuasive authority." (*Ibid.*)

The Supreme Court of New Hampshire reached a similar conclusion in *State* v. *Johnson* (1991) 134 N.H. 498 [594 A.2d 1288], but instead of setting

out a constitutional rule of law applicable to all cases, the court in *Johnson* adopted a balancing-test analysis. Moreover, the New Hampshire court did not go so far as to conclude that the alienage or child support cases such as *People* v. *Majado* were wrongly decided; rather the court distinguished those cases as involving the weighing of different policies. "The underlying rationale justifying the application of collateral estoppel in all of these [alienage and child support] cases appears to be the need to preserve judicial resources when an unchanging issue has been determined by a prior conviction. . . . As we have noted on prior occasions, the question of whether collateral estoppel applies in criminal cases is determined by weighing competing policy considerations." (594 A.2d 1288, 1291-1292.) "Where a prior conviction involves a factual issue that is necessarily determinative of a subsequent prosecution, and the policy considerations justifying the application of collateral estoppel are slight, the State must marshal its evidence and prove its case as completely as it did in the original prosecution." (*Id.* at p. 1293.)

In *Johnson*, the defendant was convicted of driving a motor vehicle with a revoked license, the central issue in the case being whether the defendant drove a car on the day of the offense; in defense, defendant testified that he was not driving the car on the day in question. In a subsequent trial for perjury, the state filed a formal motion "requesting the invocation of collateral estoppel to prevent the relitigation of the findings of fact made in the operating-after-revocation proceedings." (594 A.2d at p. 1290.) Applying a balancing test, the court, citing *Ingenito*, acknowledged the danger that the use of collateral estoppel may impair the defendant's right to a fair trial. The court concluded that "The interests that would best be served by the application of collateral estoppel in this case—deterrence of defendants from giving false testimony, and economy in the use of judicial resources—are simply outweighed by those considerations which favor the defendant. ' "The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy." ' " (*Id.* at p. 1292.)

More recently, the Court of Appeals of Michigan, in *People* v. *Goss* (1993) 200 Mich.App. 9 [503 N.W.2d 682], after reviewing the case law of other jurisdictions, decided that ". . . a defendant's constitutional right to a trial by jury precludes the application of collateral estoppel to establish facts relating to an essential element in a subsequent criminal prosecution. [¶] In so holding, we adopt the reasoning set forth by the Supreme Court of New Jersey in *Ingenito*," (503 N.W.2d at p. 686), and "explicitly reject the use of a balancing test under the rubric of due process in making this determination. [Citations.] It is inappropriate to determine the applicability of collateral estoppel case by case in terms of a balancing test weighing competing

policy considerations because more is at stake than just a defendant's right to due process requiring the state to prove, beyond a reasonable doubt, every element of the charge against him. Accordingly, in the clash between the principle of collateral estoppel and the constitutional right to trial by jury, collateral estoppel must give way to permit a defendant's unfettered exercise of the constitutional right to trial by jury." (*Id.* at p. 687.)

The procedural posture of the *Goss* case is similar to the posture of the instant case in that the collateral estoppel issue came to the appellate court prior to the trial in which it was sought to be invoked by the prosecution. In *Goss*, the defendant was convicted of first degree murder, two counts of assault with intent to commit murder, two counts of criminal sexual conduct, kidnapping, and armed robbery. All counts, except the murder count, were affirmed on appeal; on remand for retrial on the charge of felony murder, the prosecution moved that the jury be instructed that the element of armed robbery necessary to establish felony murder had been proven and was not an issue for the jury to decide. The trial court denied the prosecution's motion, and the prosecution appealed. Accordingly, in both the instant case and *Goss*, the appellate courts are addressing the issue of collateral estoppel before the trial at which the prosecution seeks to assert it. Thus, the case at bar and *Goss* are distinguishable from *People v. Ford* (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132], a case relied upon by real party.

The dissenting opinion in *Goss* relied heavily on *Ford* to support the view that the prosecution should be able to assert the doctrine of collateral estoppel against the defendant. In the case at bar, the prosecution's motion in the trial court relied heavily on *Ford*, and the trial court at oral argument also expressly cited *Ford* before making its ruling. Accordingly, *Ford* merits our detailed analysis.

## V

### RELIANCE ON PEOPLE V. FORD

In *People v. Ford, supra*, 65 Cal.2d 41, the defendant burglarized the home of John Roope on June 2; on June 9, defendant entered Roope's home, robbed Roope at gunpoint, and forced Roope to drive him to another town, where defendant kidnapped his (defendant's) wife and assaulted a man with whom his wife was living. Defendant then forced Roope to accompany him and his wife and children, while he drove Roope's car aimlessly about the countryside where, several hours later, he shot and killed a deputy sheriff. In the first trial, a jury found defendant guilty on seven counts, including robbery, kidnapping, and murder. On appeal, the Supreme Court reversed

the judgment on the murder count because of errors in the instructions, affirmed the judgments on the nonhomicide counts, and modified the judgment on the burglary count. Although defendant testified on his own behalf at the first trial, he did not do so on retrial; moreover, we infer from the summary of the psychiatric evidence on the first trial (*People* v. *Ford* (1964) 60 Cal.2d 772, 787 [36 Cal.Rptr. 620, 388 P.2d 892]) and the summary of such evidence on retrial (*People* v. *Ford, supra,* 65 Cal.2d at p. 55), that the evidence presented to the second jury on the element of defendant's intent was different than that at the first trial. At the second trial, defendant offered extensive testimony of three psychiatrists to establish that at the time of the homicide, he did not possess the mental ability to commit first degree murder, due to emotional disturbance, intoxication and malnourishment. (65 Cal.2d at pp. 51-52.) The jury was instructed on both felony murder and on premeditated murder, although the basis of the jury's finding of first degree murder could not be ascertained. On appeal, the court found that because the prosecution "presented no psychiatric testimony to rebut the evidence introduced by the defense" (65 Cal.2d at p. 55), the evidence was insufficient to support the premeditation requisite to a conviction of willful, deliberate and premeditated murder. (*Ibid.*) The court also held that the first degree murder conviction could not be upheld on the basis of the felony-murder rule because as a matter of law the robbery had terminated prior to the homicide. (*Id.* at p. 56.) The court then concluded that because the kidnapping and the weapon offense were continuing crimes "still in the process of being committed by defendant when the killing occurred" (*id.* at p. 57), the evidence established "the homicide as murder of the second degree due to the operation of the felony-second-degree murder rule." (*Ibid.*) The judgment was thus modified by reducing the degree of the crime to murder of the second degree.

One of Ford's appellate contentions with respect to the murder conviction was that ". . . since he was not arraigned on a theory of felony-murder it was error to submit instructions on that issue to the jury. He further claims that the instructions were improper because they told the jury that he had been convicted of robbery, kidnaping and possession of a concealable weapon by an ex-felon, and reserved for the jury only the questions whether the homicide was perpetrated during the commission of any or all of these felonies, and whether he possessed the intent requisite to the various felonies at the time of the commission of the homicide." (65 Cal.2d at p. 50.)

In finding no error occurred in instructing the jury, the court stated: "It is obvious that the felony convictions obtained at the first trial substantially affected the prosecution and defense upon retrial of the murder charge. The burden upon the prosecution was lessened to the extent that it was permitted the benefit of the felony-murder rule without the necessity of having to

prove the elements of the respective felonies. Nor was the defense permitted to dispute the fact that the necessary elements of the felonies had been conclusively found. These facts do not, however, compel the conclusion urged upon us by defendant. The doctrine of res judicata applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined though the offenses be different. (*Sealfon* v. *United States*, 332 U.S. 575, 578 [68 S.Ct. 237, 92 L.Ed. 180]; see *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, 58 Cal.2d 601, 606 . . . .) Thus where a defendant is tried on multiple counts of a single information, each count being considered as a separate and distinct offense, the doctrine of res judicata operates to preclude the relitigation of issues finally determined upon retrial of only one count. (See *People* v. *Beltran*, 94 Cal.App.2d 197, 205 . . . .) It follows that the doctrine of res judicata justifies instructions, where relevant, that a defendant has been found guilty of crimes finally adjudicated which are charged as elements in another charge or charges then in the process of being retried. Accordingly, it was not error for the trial court to give appropriate instructions that defendant had been convicted of the various felonies, and that if they found that defendant's commission of such felonies was conjoined with his commission of the homicide, they might predicate their verdict on the felony-murder rule articulated in Penal Code section 189." (65 Cal.2d at pp. 50-51.)

The case at bar is distinguishable from *Ford* factually and procedurally. In *Ford* it is also significant that the defendant was permitted to, and did, litigate on retrial the issue of whether he had the intent requisite to the various felonies at the time of the commission of the homicide. In fact, there is no indication in *Ford* that the jury instruction prevented defendant from presenting his defense of diminished capacity or impaired his right to a fair trial on the homicide charge. Thus, *Ford* is distinguishable from the instant case because petitioner here asserted a mistaken identity defense at his attempted murder trial and would be precluded from presenting this defense under the challenged court order. Moreover, petitioner is not only asserting the claim that the court order constitutes instructional error, but that it impairs his right to jury trial and to the presumption of innocence. These are issues not considered in *Ford*. ■ A decision is not authority for issues not considered therein. (*People* v. *Lonergan* (1990) 219 Cal.App.3d 82, 93 [267 Cal.Rptr. 887].) It must also be remembered that *Ford* was decided before *Ashe* and *Simpson* questioned the ability of the prosecution to invoke collateral estoppel against a criminal defendant.

For all of the foregoing reasons, *Ford* is not controlling authority for this case. We proceed to resolve this case on the principles of collateral estoppel set out in *Lucido* v. *Superior Court*, *supra*, 51 Cal.3d 335.

## VI

### Prosecution Cannot Assert Collateral Estoppel Against Petitioner

 In this case, although the threshold requirements for application of the doctrine of collateral estoppel were met (*Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 339), the prosecution failed to establish that its assertion of the doctrine of collateral estoppel is consistent with principles of due process and sound judicial policy. " 'Quite simply, the pursuit of judicial economy and efficiency may never be used to deny a defendant his right to a fair trial.' " (*People* v. *Hogue* (1991) 228 Cal.App.3d 1500, 1506 [279 Cal.Rptr. 647].)[4]

In this case, the assertion of collateral estoppel by the prosecution deprives petitioner of the right to present his defense to the jury. To the extent that he did not testify at his attempted murder trial and wishes to do so in the instant trial, the court's ruling would also preclude him from presenting evidence and defenses which, for whatever reason, may not have been presented at the prior trial. Thus, the interests of petitioner far outweigh any interest in judicial economy.

Moreover, the assertion of the doctrine by the prosecution cannot be said to promote the public policy of protecting litigants from harassment. To the extent that permitting petitioner a full trial on all issues risks a verdict that may be inconsistent with the prior verdict, we note that "Consistency, however, is not the sole measure of the integrity of judicial decisions. We must also consider whether eliminating potential inconsistency (by displacing full determination of factual issues in criminal trials) would undermine public confidence in the judicial system. As has the majority of courts in

---

[4]Petitioner relies heavily on *Hogue*. Although we believe it was correctly decided, the case is distinguishable from the one at bar and not dispositive herein. In *Hogue*, the defendant was charged and convicted of multiple sex acts on a single victim; on appeal, the court affirmed his convictions of kidnapping for purpose of committing a lewd and lascivious act on a child under 14, lewd and lascivious conduct by force or violence, and oral copulation with a child under 14; a count of penetration with a foreign object on a child under 14 and by a person more than 10 years older was reversed because of error in instructions. On retrial of the latter count, the court granted the prosecution motion to preclude the defendant from litigating the issues of identity and alibi, as those issues were adjudicated by the jury in the first trial. In holding the trial court's ruling was error, the appellate court stated that the issue of the identity of the defendant as the person who violated Penal Code section 289, subdivision (j) was not finally decided and affirmed on the merits; that conviction was reversed. (228 Cal.App.3d 1500.) Thus, *Hogue* is a case in which the threshold requirements for application of collateral estoppel were not met.

There is no contention in the instant case that the issues decided by the prior judgment for attempted murder are not identical to the ones sought to be relitigated.

other jurisdictions, we conclude it would." (*Lucido* v. *Superior Court, supra,* 51 Cal.3d at p. 347.) Accordingly, petitioner's interest in a trial de novo is consistent with maintaining integrity and public confidence in the judicial system, while the application of collateral estoppel threatens those policies. Thus, the policies underlying collateral estoppel are far outweighed by other policies which are vindicated by affording petitioner a trial de novo.

We also question whether, as a practical matter, the murder trial can be limited to the issue of causation and the jury instructed in the manner requested by the prosecution without causing prejudice to petitioner as to the issue actually to be decided by the jury in such a limited trial. This is so because a jury so instructed could not help but infer that the defendant had either admitted the other issues or another jury had already decided them against him. Either inference creates "a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations." (*State* v. *Ingenito, supra,* 432 A.2d 912, 918-919.)

■ We note that the decisions of sister states are persuasive only in the absence of controlling California authority. (*Bellflower Education Assn.* v. *Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805, 811, fn. 2 [279 Cal.Rptr. 179].) ■ In this case, however, it is unnecessary for us to choose between the approach of the Supreme Court of New Hampshire in *State* v. *Johnson, supra,* 594 A.2d 1288, which adopted a balancing test analysis, and the approach of the Supreme Court of New Jersey in *State* v. *Ingenito, supra,* 432 A.2d 912, which adopted a broad rule barring the assertion of collateral estoppel by the government to establish facts relating to an essential element in a subsequent criminal prosecution. Under both of the foregoing approaches, as well as under the principles of collateral estoppel set out in *Lucido,* we reach the same result: The trial court's order must be vacated.

### DISPOSITION

Let a peremptory writ of prohibition issue directing respondent court to vacate its August 20, 1993, order and to enter a new and different order denying the prosecution's motion re collateral estoppel.

Johnson, J., concurred.

**WOODS (Fred), J.,** Dissenting.—May a criminal defendant be collaterally estopped from presenting all or part of his defense?

This question, raised by the instant petition, has divided both federal courts (compare, e.g., *United States* v. *Rangel-Perez* (C.D.Cal. 1959) 179

F.Supp. 619; *Pena-Cabanillas* v. *United States* (9th Cir. 1968) 394 F.2d 785; *United States* v. *Colacurcio* (9th Cir. 1975) 514 F.2d 1 [allowing preclusion against a criminal defendant] with *United States* v. *DeAngelo* (3d Cir. 1943) 138 F.2d 466) and state courts (Compare, e.g., *Commonwealth* v. *Evans* (1869) 101 Mass. 25; *Commonwealth* v. *Ellis* (1892) 160 Mass. 165 [35 N.E. 773]; *State* v. *Sargood* (1907) 80 Vt. 412 [68 A. 51] [allowing preclusion] with *People* v. *Goss* (1993) 200 Mich.App. 9 [503 N.W.2d 682]. See generally, 147 A.L.R. 991; Comment, *The Use of Collateral Estoppel Against The Accused* (1969) 69 Colum. L.Rev. 515; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 356, pp. 411-413). With but one exception,[1] it has *not* divided the courts of California.

Our decisions have consistently applied collateral estoppel " 'by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' " (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439].) Prosecutors have been estopped from murder prosecutions (*People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622]) and criminal defendants from presenting a defense (*People* v. *Majado* (1937) 22 Cal.App.2d 323 [70 P.2d 1015]). Our decisions have fortified "the public interest in determining criminal guilt and innocence at criminal trials" (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 352 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995]), preserved the integrity of the judicial system, promoted judicial economy, protected litigants from harassment (*ibid.*), "maintain[ed] the stability of judgments, insure[d] expeditious trials" (*People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720, 731 [79 Cal.Rptr. 447]), and spared victims and witnesses from endless court appearances.

All of these interests—with all due respect to the majority—would be served by denying the petition.

---

[1] In *People* v. *Hogue* (1991) 228 Cal.App.3d 1500 [279 Cal.Rptr. 647] the defendant was charged with four sex crimes. All "were . . . sex acts upon a single victim *closely connected in time*." (*Id.* at p. 1502, italics added.) At his first trial, the defense was alibi and mistaken identity. The jury rejected the defense and convicted defendant on all counts. On appeal, one count was reversed because the trial court failed to instruct on its "10 years older" element. The other three counts were affirmed.

At the second trial, defendant was collaterally estopped from relitigating identity (and therefore alibi). Defendant then waived jury and was found guilty by the court. On appeal, the conviction was reversed on the ground it was error to apply collateral estoppel against defendant.

*People* v. *Hogue* is wrongly decided. Irreconcilable with the Supreme Court's decision in *People* v. *Ford* (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132], *Hogue* offers this metaphysical distinction: "[I]n *Ford* the issue of defendant's guilt of the underlying felonies had been tried on the merits and *affirmed* on appeal. In other words, the issue to be decided—whether the defendant committed certain felonies—merged with the judgment of conviction of those felonies. By contrast, the issue to be decided here—the identity of appellant as the person who violated section 289, subdivision (j)—did not merge with the judgment of conviction on the related counts." (228 Cal.App.3d at p. 1504.)

In sum, my answer to the question is *yes*. A criminal defendant may be estopped from presenting a defense. Our cases, as I explain, so hold.

## CALIFORNIA CASES: A SUMMARY

*People v. Majado (1937) 22 Cal.App.2d 323 [70 P.2d 1015]*

The defendant was found guilty of failing to provide for his minor child (Pen. Code, § 270; statutory references, unless otherwise noted, are to the Penal Code). He was granted probation and ordered to pay $15 a month. When probation expired defendant ceased payments and was again charged with failure to provide. At this second trial defendant was collaterally estopped from contesting paternity, that issue having been finally decided in the first trial. The Court of Appeal approved use of collateral estoppel against the defendant and affirmed the conviction.

*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd. (1962) 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439]*

Teitelbaum was convicted of conspiracy to commit grand theft, attempted grand theft, and filing a fraudulent insurance claim—all arising from his claimed "fur robbery." After this criminal conviction was final, Teitelbaum filed a civil suit against his insurance company, alleging the same furs had been robbed and thus were covered by his insurance policy. A jury found in his favor but the trial court ruled the evidence insufficient and granted a new trial. The insurance company moved for judgment notwithstanding the verdict based upon collateral estoppel. The motion was denied.

Justice Traynor, writing for a unanimous court, reversed the trial court order denying the insurance company's motion for judgment notwithstanding the verdict, holding that a criminal conviction may be conclusive in a subsequent civil action and mutuality is not required for collateral estoppel.

In this landmark case Justice Traynor stated, "Collateral estoppel applies to successive criminal trials . . . and although not widely adopted, has been applied in the better reasoned cases that have dealt with the problem here presented." (58 Cal.2d at p. 606, citations omitted.) One of the criminal cases cited with apparent approval was *People v. Majado.* (*Ibid.*) Justice Traynor further noted that criminal trials have "rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt . . . and of a unanimous verdict . . . , the right to counsel . . . , and a record paid for by the state on appeal . . . . *Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants*

*are estopped from relitigating issues determined in conformity with these safeguards.*" (*Ibid.*, citations and fn. omitted; italics added.)

*People v. Ford (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132]*

In his first trial, defendant was convicted of burglary, possession of a concealable weapon, robbery, two counts of kidnapping, assault with a deadly weapon, and first degree murder of a police officer. He was sentenced to death. On first appeal, the California Supreme Court reversed the murder conviction for instructional errors but affirmed the other convictions.

In the murder retrial, the trial court gave felony-murder instructions and applied collateral estoppel by informing the jury defendant "had been convicted of robbery, kidnaping and possession of a concealable weapon by an ex-felon, and reserved for the jury only the questions whether the homicide was perpetrated during the commission of any or all of these felonies, and whether he possessed the intent requisite to the various felonies at the time of the commission of the homicide." (65 Cal.2d at p. 50.)

In approving the trial court's use of collateral estoppel against the defendant Justice Peters, for a unanimous court,[2] stated: "The doctrine of res judicata applies to criminal as well as civil proceedings and operates to conclude those matters in issue which the verdict determined though the offenses be different. . . . Thus where a defendant is tried on multiple counts of a single information, each count being considered as a separate and distinct offense, the doctrine of res judiciata operates to preclude the relitigation of issues finally determined upon retrial of only one count. . . . It follows that the doctrine of res judicata justifies instructions, where relevant, that a defendant has been found guilty of crimes finally adjudicated which are charged as elements in another charge or charges then in the process of being retried. Accordingly, it was not error for the trial court to give appropriate instructions that defendant had been convicted of the various felonies, and that if they found that defendant's commission of such felonies was conjoined with his commission of the homicide, they might predicate their verdict on the felony-murder rule articulated in Penal Code section 189." (65 Cal.2d at pp. 50-51, citations omitted.)

To avoid the apparent controlling effect of *Ford*, the majority asserts *Ford* is "distinguishable . . . factually and procedurally." (Maj. opn., *ante*, p. 168.) If there is a *procedural* distinction the majority does not specify it. *A* procedural distinction is a partial reversal in *Ford* versus a full affirmance in the instant case. Perhaps the majority is suggesting that a judgment,

---

[2]Justice McComb dissented but not as to this issue.

reversed in part, has greater collateral estoppel effect than a judgment fully affirmed.

The majority's factual distinction is no more persuasive. Ford was permitted to raise a diminished capacity defense to the murder charge because that charge had been *reversed* and thus collateral estoppel was inapplicable. Ford was precluded from raising all other defenses collaterally estopped by his affirmed convictions on the other charges (robbery, kidnapping, etc.). Ford's retrial was fair—notwithstanding his being collaterally estopped from raising potential defenses—because application of the collateral estoppel doctrine is fair.

*People v. Superior Court (Scofield) (1967) 249 Cal.App.2d 727 [57 Cal.Rptr. 818]*

Defendants were charged with conspiracy and 28 counts of submitting false insurance claims. They were temporarily discharged when Superior Court Judge Lawler granted their motions to suppress the evidence (seized pursuant to a search warrant) and set aside the indictment (§ 995). But on appeal by the People, Judge Lawler's orders were reversed because another superior court judge, Judge Wapner, had previously upheld the seizure.

Justice Fourt, writing for Justices Wood and Lillie, stated: "We are persuaded that the principles of res judicata apply in criminal matters to bar a redetermination of identical issues decided in a prior proceeding instituted by the same parties. Once the prosecutor has convinced a trier of fact to find a certain fact (and that determination becomes final), he should not have the burden of proving again and again that same fact in court after court." (249 Cal.App.2d at p. 735.)

*People v. One 1964 Chevrolet Corvette Convertible (1969) 274 Cal.App.2d 720 [79 Cal.Rptr. 447]*

Frederick Busch borrowed his father's Corvette and later, when the police found marijuana in it, was convicted of marijuana possession. Thereafter, the police instituted forfeiture proceedings against the Corvette and Mr. Busch (the father) filed an answer denying that either he or his son knew there was marijuana in the car. The People moved for summary judgment (seeking collateral estoppel based upon Frederick Busch's conviction) but the motion was denied. A jury then returned a verdict denying forfeiture. The trial court, however, granted a new trial motion and, after some delay, summary judgment for the People (based upon collateral estoppel).

Justice Lillie, for a unanimous court, affirmed the judgment. She rejected Mr. Busch's claims that collateral estoppel should not be applied against him

because he was not a party to the criminal proceeding, had no notice of it, was not in privity with any party, and no appeal had been taken. (274 Cal.App.2d at p. 729.) Justice Lillie stated, "Collateral estoppel may be invoked to conclusively resolve any issue necessarily determined in previous litigation between the same parties or their privies." (*Id.* at p. 726.) Regarding "privies," Justice Lillie noted: "However, to maintain the stability of judgments, insure expeditious trials, prevent ' " 'vexatious litigation with its attendant expense both to the parties and to the public' " ' and to serve the ends of justice, more and more our courts are striving to give effect to judgments by extending 'privies' beyond the classical description to include relationships not originally embraced therein." (*Id.* at p. 731.)

*People v. Taylor (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622]*

Defendant Taylor was to be the getaway driver for his confederate robbers, Daniels and Smith. But things did not go as planned. The intended robbery victims, Mr. & Mrs. West, fearing that gun-wielding Smith would execute them as he threatened to do, each shot at Smith, killing him. Both Taylor and Daniels were charged with murder (causing Smith's death by inciting the Wests to shoot him) and robbery. Daniels, tried first, was convicted of robbery but acquitted of murder.

Taylor, tried second, was convicted of both robbery and murder. The Supreme Court reversed the murder conviction on collateral estoppel grounds. The court stated: "Since defendant was sitting in the getaway car outside the store at the time of the shooting, his subsequent conviction for murder could result only upon a finding that one of his confederates, Daniels or Smith, harbored malice which the trier of fact then attributed to defendant because of his role as an aider and abettor. (See § 31.) At Daniels' trial the People already have sought and have failed to establish that either Daniels or Smith entertained the requisite malice aforethought. Defendant thus argues that the doctrine of collateral estoppel should have precluded the People from relitigating this identical issue at his later trial. We agree." (12 Cal.3d at p. 691.)

In explaining why the prosecution could not prosecute Taylor even once for murder, the Supreme Court cited strong policy considerations. Besides judicial economy ("even more important in criminal than in civil trials" (12 Cal.3d at p. 695)) and avoiding vexatious litigation, the court underscored the importance of avoiding contradictory verdicts. It stated, "Perhaps the most compelling reason for an application of collateral estoppel where vicarious liability is at issue is to prevent the compromising of the integrity of the judicial system caused by the rendering of inconsistent verdicts.

Criminal trials generally receive more publicity than civil ones, and the public's view of the judicial system in general is often shaped by the impression of the fairness of the criminal justice system in particular." (*Id.* at pp. 695-696.)

*People v. White (1986) 185 Cal.App.3d 822 [231 Cal.Rptr. 569]*

On March 28, 1979, the bullet-riddled bodies of Phyllis Lamboy and Darryl Charles were found in a vacant San Francisco housing project. Appellant was charged with their murders. At his first trial a jury convicted appellant of both first degree murders but found a firearm-*use* allegation not true (there was evidence appellant's brother may also have been involved). On appeal, the convictions were reversed (improper hearsay evidence had been admitted).

At the second trial the prosecution relied on two theories: appellant was the shooter; appellant aided the shooter. The jury (without specifying which theory they relied on) again convicted appellant of both first degree murders.

The Court of Appeal reversed the convictions because the "shooter theory" had been collaterally estopped by the first jury's *not true* finding.

Although for almost all other purposes, an enhancement allegation such as firearm use (§ 12022.5) is an appendage to a substantive count, without independent viability, for collateral estoppel purposes a not true finding survives the death (reversal) of the substantive count. This result[3] fortifies our jury trial system and reduces the risk of contradictory jury findings.

*Lucido v. Superior Court (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995]*

A finding, made at a probation revocation hearing, that defendant did *not* commit a crime will not bar a prosecution charging defendant with the commission of that crime.

Collateral estoppel is inapplicable, not because all its threshold requirements have not been satisfied, but because applying it would "undermine the

---

[3]*People* v. *Asbury* (1985) 173 Cal.App.3d 362 [218 Cal.Rptr. 902], with similar facts, reaches the same result. See also *People* v. *Griffin* (1994) 22 Cal.App.4th 801 [27 Cal.Rptr.2d 721].

The majority accepts the holding of *White, Asbury,* and *Griffin:* a jury's reasonable doubt finding collaterally estops the prosecution. What the majority apparently does not accept is that a jury's finding *beyond a reasonable doubt,* which is affirmed and final on appeal, may have *any* collateral estoppel effect on a criminal defendant.

public interest in determining criminal guilt and innocence at criminal *trials*." (51 Cal.3d at p. 352, italics added.)

This decision preserves and strengthens the vitality of our jury trial system.

*People v. Percifull (1992) 9 Cal.App.4th 1457 [12 Cal.Rptr.2d 331]*

Applying *Lucido*, *Percifull* holds a finding, made at a dependency hearing, that parents had not criminally abused their child will not bar a child abuse criminal conviction.

This holding affirms the primacy of jury trial in our criminal justice system.

CONCLUSION

As California appellate decisions make clear, when the jury's finding—that it was Abraham Gutierrez who shot Sandra Zarate—became final, Mr. Gutierrez could not again "draw[] into controversy" (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 605) that same issue.

Although Mr. Gutierrez would not benefit from this application of the collateral estoppel doctrine, other defendants would. Their last refuge is a jury trial. It, with all attendant protections—presumption of innocence, proof beyond a reasonable doubt, unanimous verdict, right to counsel—not only protects the innocent but also, given a reasonable doubt, the guilty.

But this last refuge—expensive, time consuming, sometimes ineffectual—perseveres only so long as it enjoys public confidence. That confidence is undermined by the "specter of a system" (*People* v. *Taylor, supra,* 12 Cal.3d 686, 696) which would allow one fair jury to find Mr. Gutierrez did shoot Sandra Zarate and another fair jury to find he did not. To permit such a "specter" is to encourage erosion of jury trial as we know it and to aid proposals for nonunanimous verdicts, for ten- or eight- or six-person juries, and for further elimination of jury trial for "minor" offenses.

Jury trial is the cornerstone of our justice system. I would preserve not degrade it. For that reason, I respectfully dissent.

A petition for a rehearing was denied May 10, 1994, and the petition of real party in interest for review by the Supreme Court was denied August 11, 1994. Kennard, J., was of the opinion that the petition should be granted.