# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 7, 2005 Session

## STATE OF TENNESSEE v. DAVID SCARBROUGH

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 62279B     Ray L. Jenkins, Judge**

---

**No. E2003-02850-SC-S09-CD - Filed November 30, 2005**

---

We granted this interlocutory appeal prior to the defendant's retrial for felony murder to address the following issue:  whether the defendant may contest his guilt as to the felony underlying the felony murder charge where the felony conviction for aggravated burglary was affirmed on direct appeal but the felony murder conviction was reversed.  The trial court found that the defendant was prohibited from challenging his guilt as to the underlying felony of aggravated burglary because that conviction was final.  The Court of Criminal Appeals concluded, however, that the doctrine of collateral estoppel does not prevent the defendant from contesting his guilt as to the underlying felony of aggravated burglary during the retrial for the charge of felony murder.  After reviewing the record and applicable authority, we conclude that the use of collateral estoppel by the prosecution against the defendant to establish an essential element of the charged offense violates the right to trial by jury under article I, section 6 of the Tennessee Constitution.  We further conclude, however, that the prosecution is permitted to introduce evidence of the prior conviction of aggravated burglary if the trial court determines that its probative value is not substantially outweighed by the risk of unfair prejudice to the defendant.  Accordingly, we affirm the Court of Criminal Appeals' judgment, and we remand to the trial court to hold the retrial consistent with the principles in this opinion.

**Tenn. R. App. P. 9  Interlocutory Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; Randall E. Nichols, District Attorney General; and William H. Crabtree, Assistant District Attorney General, for the Appellant, State of Tennessee.

Leslie M. Jeffress, Knoxville, Tennessee, for the Appellee, David Leon Scarbrough.

**OPINION**

In 1998, in the Criminal Court of Knox County, Tennessee, the defendant, David Scarbrough, was convicted of two counts of felony murder, two counts of theft, and one count of aggravated burglary. The evidence in the record is summarized below.[1]

**BACKGROUND**

On February 4, 1995, the victims, Lester and Carol Dotts, were shot to death in their home in Knox County, Tennessee. Lester Dotts was shot five times and Carol Dotts was shot seven times with a 9 mm weapon. Their home had been broken into and ransacked.

At the defendant's trial, Harley Watts, age thirteen, testified that he had been riding around in a car on the night of the murders with Scarbrough and Thomas Gagne. According to Watts, Gagne drove to a "rich" neighborhood, parked at a dead-end street, and said he intended to burglarize one of the homes. Gagne and Scarbrough got out of the car and Watts remained inside. Watts testified that when Gagne and Scarbrough hurriedly returned to the car thirty minutes later, Scarbrough was carrying a 9 mm gun, which he handed to Gagne as they drove away. Watts further testified that Gagne said, "somebody came out on [me] and [I] started shooting," and that Gagne later threw something out of the car.

Scarbrough told police that he was with Gagne and Watts on the night of the murders and that Gagne, who was in possession of a 9 mm gun, drove to the victims' neighborhood. Scarbrough stated that he waited behind the victims' house while Gagne went inside. After fifteen minutes, he heard gunshots and ran back to the car. Gagne also ran back to the car where, according to Scarbrough, he said, "I had to do it." Defendant Scarbrough later told police that he had been in possession of the 9 mm gun when he got out of the car but that he gave the gun to Gagne.

At trial, Scarbrough testified that he was not at the scene and was not involved in the crimes at all. He claimed that he was pressured to give the statements to police and that he had learned the details of the murders from Watts and from newspapers. The defendant testified that he was with his girlfriend, Kasey Keirsey, on the night of the murders. Keirsey admitted at trial, however, that she had been at a school basketball game with her friends on the night of the murders and that Scarbrough had not been with her at the basketball game.

At the close of the trial, the jury convicted the defendant of two counts of felony murder, two counts of theft, and one count of aggravated burglary. On appeal, the Court of Criminal Appeals reversed the felony murder convictions after concluding that the trial court failed to instruct the jury on the lesser included offense of facilitation of first degree murder. The intermediate court, however, upheld the convictions for theft and aggravated burglary.

---

[1] The evidence from the defendant's trial is summarized from the Court of Criminal Appeals' decision.

The case was remanded to the trial court for retrial on the felony murder charges. Before the retrial, however, the State filed a pretrial motion arguing that it should be permitted to rely on the defendant's conviction for aggravated burglary to prove the underlying felony for the felony murder at the retrial. The State reasoned that the defendant's aggravated burglary conviction was final and that the doctrines of "law of the case" and collateral estoppel prohibited the defendant from arguing that he did not commit the offense of aggravated burglary. The defendant disagreed, arguing that the State's position would violate his constitutional rights to a fair trial and a trial by jury.

After the completion of the argument, the trial court applied the "law of the case" doctrine and concluded that the State could rely on (and the defendant could not challenge) the final conviction for aggravated burglary in the retrial for felony murder. An interlocutory appeal was requested by the defendant, which was granted by both the trial court and the Court of Criminal Appeals. The Court of Criminal Appeals then held that the "law of the case" doctrine was inapplicable and that the collateral estoppel doctrine cannot be applied against a defendant. The intermediate court explained that the "defendant's constitutional right to a jury trial would be violated by the trial court's order which . . . prevents him presenting proof which would question the burglary conviction."

We granted the State's application to this Court for further interlocutory review.

## ANALYSIS

### *Collateral Estoppel*

We begin by summarizing the parties' arguments with respect to the collateral estoppel issue.[2] In arguing that the defendant is prohibited from challenging his guilt as to aggravated burglary during the retrial for felony murder, the State makes two main points: first, that applying collateral estoppel does not violate the defendant's constitutional right to a jury trial because he was convicted of aggravated burglary by a jury and the conviction is final; and second, that applying collateral estoppel to prevent the defendant from challenging the aggravated burglary conviction is in the interest of judicial efficiency.

To support these arguments, the State urges the Court to adopt a balancing analysis which would consider a number of factors in determining whether collateral estoppel may be applied in a given case. The suggested factors include an analysis of whether the issue and the defendant are identical to those in the prior proceeding, whether the defendant had a full and fair opportunity to actually litigate the issue, whether the prior charge was a felony, whether the sentence was

---

[2] Although the State has not raised the issue, we agree with the Court of Criminal Appeals' holding that the "law of the case" doctrine is not applicable. As that court correctly noted, the "law of the case permits the foreclosing of argument on an issue that was previously decided in an appeal of the same case." See State v. Jefferson, 31 S.W.3d 558, 560-61 (Tenn. 2000). In the present case, however, the retrial is not for aggravated burglary, which was affirmed on appeal; instead, the retrial is for felony murder, which was reversed on appeal. In short, the issue of whether the conviction for aggravated burglary may be used in the retrial for felony murder has never been decided.

sufficiently serious to provide an incentive to appeal and whether the prosecutor brought separate prosecutions for strategic reasons or in bad faith. See Richard B. Kennelly, Jr., Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases, 80 Va. L. Rev. 1379, 1423 (1994).

In response, the defendant contends that applying collateral estoppel principles would violate his constitutional rights to a fair trial and a jury trial in his retrial for felony murder. The defendant argues that the same jury must consider all the evidence in the same proceeding to find the facts, to determine whether the essential elements of the charged offense have been proven, and to determine guilt or innocence.

We begin our analysis by reviewing the principles of collateral estoppel. This Court has said that "[o]nce an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different." Gibson v. Trant, 58 S.W.3d 103, 113 (Tenn. 2001) (quoting State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 178-79 (Tenn. Ct. App. 2000)). In other words, an issue finally determined in a prior proceeding must be accepted as established in a later proceeding. The doctrine of collateral estoppel "promotes finality, conserves judicial resources, and prevents inconsistent decisions." Gibson, 58 S.W.3d at 113.

The doctrine of collateral estoppel, which has its origin in civil cases, applies only when "the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment." Dickerson v. Godfrey, 825 S.W.2d 692, 694 (Tenn. 1992) (quoting Home Ins. Co. v. Leinart, 698 S.W.2d 335, 336 (Tenn.1985)). The party who seeks to bar litigation of an issue by invoking collateral estoppel "has the burden of proving that the issue was, in fact, determined in a prior suit between the same parties and that the issue's determination was necessary to the judgment." Dickerson, 825 S.W.2d at 695.

The issue of whether collateral estoppel may be asserted by the prosecution against a defendant in a criminal case – often referred to as affirmative or offensive collateral estoppel – is a question of first impression in Tennessee.[3] The question is particularly complex because it is interwoven with a defendant's constitutional right to a trial by jury. Accordingly, we will next turn to decisions from other jurisdictions for guidance.

---

[3] In State v. Flake, 114 S.W.3d 487, 507 (Tenn. 2003), the State argued that collateral estoppel prevented the defendant from seeking the suppression of evidence where the motion had been denied in a separate proceeding involving the same parties and the same evidence. Although the Court stated that "collateral estoppel likely could be applied in this circumstance," we nonetheless reviewed the issue on the merits. Id. In sum, the issue in Flake did not involve the State's use of collateral estoppel to prevent the re-litigation of the essential elements of a charged offense, and the court's statement was *dicta* that is in no way controlling in this case.

The United States Supreme Court has upheld the use of *defensive* collateral estoppel in a criminal case. In Ashe v. Swenson, 397 U.S. 436, 443-47 (1970), the Court specifically said that a defendant in a criminal case may assert collateral estoppel by relying on an acquittal in a first prosecution to bar the litigation of those facts in a later prosecution for a different offense. The Court reasoned that a defendant's reliance on the collateral estoppel doctrine in such circumstances "is embodied in the Fifth Amendment guarantee against double jeopardy." Id. at 445.

The Supreme Court has further indicated, however, that *offensive* collateral estoppel by the prosecution in a criminal case is not appropriate: "[A] conviction in the first prosecution would not excuse the *Government* from proving the same facts a second time." United States v. Dixon, 509 U.S. 688, 710 n.15 (1993) (emphasis added). Although the statement in Dixon was dicta, it illustrates that the Supreme Court has upheld the use of defensive collateral estoppel in criminal cases but has never upheld the use of offensive collateral estoppel. See also Ashe, 397 U.S. at 464-65 (Burger, C.J., dissenting) (stating that "[if the defendant] had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial.").

Some federal appellate courts have likewise indicated that the prosecution may not invoke offensive collateral estoppel against a defendant in a criminal case. In United States v. Pelullo, 14 F.3d 881, 889 (3d Cir. 1994), for instance, the court emphasized the defendant's right to trial by jury in holding that a prosecutor could not rely on a defendant's prior conviction for wire fraud to prevent re-litigation of the predicate offense during a retrial for a racketeering offense that had been reversed on appeal. The court said:

> The application of collateral estoppel against a defendant constitutes an invasion of the fact finding and ultimate decisional functions of the jury. If an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised. It follows in such circumstances that the defendant's jury right will have been, commensurately, abridged.

Id. at 892 (quoting State v. Ingenito, 432 A.2d 912, 916 (N.J. 1981)); see also United States v. Gallardo-Mendez, 150 F.3d 1240, 1244 (10th Cir. 1998) (emphasizing defendant's liberty interests in rejecting offensive collateral estoppel).

In addition, federal courts have emphasized that offensive collateral estoppel in a criminal case may not be justified solely on the often-asserted basis of judicial efficiency. The Third Circuit observed, for instance, that "the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings." Pelullo, 14 F.3d at 893. The Tenth Circuit has likewise explained that "while 'wise public policy and judicial

efficiency' may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases." Gallardo-Mendez, 150 F.3d at 1244; see also United States v. Harnage, 976 F.2d 633, 636 (11th Cir. 1992) (rejecting argument that judicial economy requires the use of collateral estoppel against criminal defendants).

In contrast, offensive collateral estoppel against a defendant in a criminal case was upheld by the Eighth Circuit in Hernandez-Uribe v. United States, 515 F.2d 20 (8th Cir. 1975). In stating that the interests of judicial efficiency supported the use of collateral estoppel against a defendant where a prior conviction was based on a jury verdict or a guilty plea, the court relied in part on a Ninth Circuit decision in which collateral estoppel was invoked against a defendant in a criminal case. Id. at 21-22 (citing Pena-Cabanillas v. United States, 394 F.2d 785 (9th Cir. 1968)). The Ninth Circuit has since changed its course, however, and has accepted the government's concession that offensive collateral estoppel may not be used against a defendant in a criminal case. United States v. Smith-Baltiher, 424 F.3d 913, 920 (9th Cir. 2005); see also United States v. Arnett, 353 F.3d 765 (9th Cir. 2003) (same). Thus, the decision in Hernandez-Uribe appears to reflect a decidedly minority view in the federal appellate courts.

### *State Courts*

Several well-reasoned state court decisions have likewise rejected the use of collateral estoppel against a defendant in a criminal case.

In Ingenito, the Supreme Court of New Jersey held that collateral estoppel was improper where the prosecution used the defendant's conviction for unlawful transfer of a weapon to establish an essential element in a later prosecution for possession of a firearm by a convicted felon. In concluding that the defendant's right to a jury trial had been violated, the court reasoned that "[i]f an essential element of a case is presented as concluded or settled, effectively withholding from the jury crucial underlying facts, the jury's capacity to discharge fully its paramount deliberative and decisional responsibilities is irretrievably compromised." 432 A.2d at 916. Moreover, the court explained that offensive collateral estoppel "constitutes a strong, perhaps irresistible, gravitational pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations." Id. at 918-19. As a result, the court rejected the argument that the defendant's right to a jury trial was preserved simply because there had been a jury in the prior proceeding:

> [T]he right to a jury in a criminal case ordinarily includes the right to have the same trier of fact decide all of the elements of the charged offense. *Unless the same jury is permitted to deliberate meaningfully upon all of the issues that are crucial to a verdict of guilt or innocence of the particular crime charged, a defendant will not have secured the jury right contemplated by the Constitution.*

Id. at 919 (emphasis added).

Likewise, in a case that strikingly parallels the one before us, the Supreme Court of Michigan, relying on Ingenito, held that a defendant's right to a jury trial prohibited collateral estoppel from being used to establish the underlying felony in the retrial of a felony murder charge. People v. Goss, 521 N.W.2d 312, 316 (Mich. 1994). After noting that the "jury's decision regarding the predicate offense does not preclude it from reaching a different conclusion in the context of the compound offense," the court explained:

> Because the first jury's verdict on the armed-robbery charge would not have precluded the jury from considering afresh the armed-robbery element of the felony-murder charge, the first jury's verdict on the armed-robbery charge does not estop [the defendant] from relitigation, or preclude the *second* jury from considering afresh, the armed-robbery element of the felony-murder charge. Estopping [the defendant] from contesting the armed-robbery would prevent the second jury from making its own independent evaluation of the armed-robbery element of felony murder, and, therefore, would be the equivalent of partially directing a verdict against him.

Id. at 316.

At least one California decision has likewise refused to allow the prosecution to invoke collateral estoppel in a criminal case. Gutierrez v. Superior Court, 29 Cal. Rptr. 2d 376 (1994). The court concluded that the defendant's interests in presenting a defense to the jury on the issues of identity and intent "far outweigh any interest in judicial economy." Id. at 386; see also State v. Stiefel, 256 So. 2d 581, 585 (Fla. App. 1972) (rejecting offensive collateral estoppel after stating that due process principles "assure an accused a jury trial on *all* issues relating to each element of a given criminal charge"). The court in Gutierrez also distinguished and questioned the validity of People v. Ford, 416 P.2d 132 (Cal. 1966), in which the prosecution had been allowed to rely on collateral estoppel in a criminal case. Gutierrez, 29 Cal. Rptr. 2d at 384-86.

Finally, in State v. Johnson, 594 A.2d 1288 (N.H. 1991), the Supreme Court of New Hampshire adopted a balancing approach, similar to that advanced by the State in our case, in which the prosecution's interests in relying on collateral estoppel must be weighed against the defendant's interests in having a jury consider all the elements of a charge. In that case, the court held that the prosecution could not bar the defendant from challenging an essential element of his conviction for operating a motor vehicle on a revoked license when that offense was used in a later trial for perjury. Although adopting the balancing analysis instead of a bright-line rule, the court recognized that "policy considerations generally weigh in the defendant's favor." Id. at 1292.

### *Application to Tennessee Law*

The concern for a defendant's right to a trial by jury emphasized in the foregoing decisions is entirely consistent with Tennessee law. "The right to trial by jury is a fundamental right preserved by article I, § 6 of the Tennessee Constitution and has 'special resonance in criminal matters.'" State v. Cleveland, 959 S.W.2d 548, 551 (Tenn. 1997) (quoting Ricketts v. Carter, 918 S.W.2d 419, 424

(Tenn. 1996)).  The right to trial by jury includes the right to a unanimous verdict.  Cleveland, 959 S.W.2d at 551.  Moreover, it "includes the right to have every fact tried and determined by twelve jurors and to have all issues of fact submitted to the same jury at the same time."  Id.; see also State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991).

In applying these principles, we have held that the right to trial by a jury of twelve must be "preserved inviolate," Bobo, 814 S.W.2d at 357, and that a violation of the fundamental right to trial by jury "defies harmless error analysis."  Cleveland, 959 S.W.2d at 552.  Indeed, we have described such an error as a "defect in the trial mechanism" that prejudices not only the accused but also the administration of justice.  Id.; see also Bobo, 814 S.W.2d at 356.

Given these fundamental protections under article I, section 6 of the Tennessee Constitution, we agree with those federal and state decisions that have rejected the prosecution's use of offensive collateral estoppel to establish an essential element of a charged offense in a criminal case.  As noted, we have consistently emphasized that the right to a trial by jury under article I, section 6 "includes the right to have *every* fact tried and determined by twelve jurors and to have *all issues of fact submitted to the same jury at the same time.*"  Cleveland, 959 S.W.2d at 551 (emphasis added).  Accordingly, instructing a jury in a retrial that it must accept as proven an essential element of the charged offense based on facts determined by a *prior* jury in a *prior* proceeding is patently incompatible with these fundamental principles.

In reaching this conclusion, we find no persuasive support for subjecting the right to jury trial to a balancing test as proposed by State.  First, a balancing analysis is inconsistent with the requirement that article I, section 6 is to be "preserved inviolate" and that violations of this fundamental right are not subject to harmless error scrutiny.  Bobo, 814 S.W.2d at 356.

Second, the efficiency and judicial economy interests cited by the State in support of a balancing approach are illusory when applied to the circumstances of this case.  The charge of felony murder requires the prosecution to establish "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy."  Tenn. Code Ann. § 39-13-202(a)(2) (2003).  In determining whether a killing occurred in the perpetration of an underlying felony, the jury may consider facts relating to time, place, causation, and continuity of actions.  State v. Pierce, 23 S.W.3d 289, 294 (Tenn. 2000); see also State v. Hinton, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000).  In the present case, the State will still have to present evidence of the aggravated burglary offense during the retrial to establish the elements of the felony murder charge.  As a result, the use of collateral estoppel would not achieve efficiency or judicial economy and would serve only to imperil the defendant's right to a trial by jury in this proceeding.

In short, we hold that the prosecution may not invoke the doctrine of offensive collateral estoppel to establish an essential element of a charge in a criminal case.

**Use of Conviction as Evidence**

We now turn to the State's alternative argument that it should be permitted to use the defendant's aggravated burglary final conviction as evidence in the retrial for felony murder, even if the collateral estoppel doctrine is inapplicable.[4]  The defendant argues that allowing evidence of the aggravated burglary conviction is improper and tantamount to invoking collateral estoppel in a different guise.

In Ingenito, the Supreme Court of New Jersey rejected the prosecutor's claim that the defendant's prior conviction was admissible as evidence of an element of a charged offense.  432 A.2d at 920.  The court reasoned that the prior conviction would not be "merely evidential" and that the technique would be "indistinguishable from collateral estoppel." Id.  The court further explained:

> Although the defendant may have been theoretically free to introduce evidence to the contrary, that did not overcome the preclusive and conclusive evidential effects of the prior conviction. . . . The effect of the prosecution's submission of the prior conviction in this case was to create a near-mandatory presumption in the minds of the jurors as to the guilt of the defendant. . . . The normal jury process, whereby evidence is admitted and the jury is enjoined to draw inferences as to each element of the offense, is vitiated where a prior conviction constitutes the sole evidence proffered by the prosecution.

Id. (citations omitted).

In Pelullo, however, the Third Circuit Court of Appeals concluded that evidence of a defendant's prior conviction may be admissible as evidence of an element of the charged offense if the trial court determines that its probative value is not substantially outweighed by the risk of unfair prejudice.  14 F.3d at 888.  The court explained:

> Admitting a judgment of conviction into evidence as one of the many pieces of evidence to prove a case is very different from according a judgment collateral estoppel effect.  As an ordinary piece of evidence, a judgment is subject to evaluation by the fact finder, who can accept or reject such evidence as it deems appropriate.  On the other hand, as collateral estoppel a judgment will have the effect of establishing as a matter of law facts determined in the prior proceeding . . . .

Id.  Accordingly, the court concluded that the trial court must weigh the probative value of the evidence for the prosecution, including "the relatively slight burden for the government to reprove the facts upon which the judgment of conviction was based," and determine whether the probative

_____

[4] The Court of Criminal Appeals did not fully address this issue.  Instead, the intermediate court held that the prosecution's use of the prior conviction was limited to impeachment of the accused.

-9-

value is substantially outweighed by the risk of unfair prejudice to the defendant. Id. (citing Fed. R. Evid. 403).

In considering these approaches, we note that the Third Circuit's approach in Pulello is consistent with our Tennessee Rules of Evidence. For instance, Rule 803 provides that the following evidence is not excluded by the general rule that excludes hearsay statements:

> Evidence of a final judgment adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year to prove any fact essential to sustain the judgment, but not including, when offered by the prosecution in a criminal case for purposes other than impeachment, judgments against persons other than the accused.

Tenn. R. Evid. 803(22). The Advisory Commission Comments states that Rule 803(22) "adopts the federal approach admitting felony conviction records to prove underlying facts necessary to the judgment." Moreover, the Advisory Commission specifically noted that "a jury's finding beyond a reasonable doubt that a serious crime was committed should be admitted in a later civil or criminal trial to prove the underlying facts necessary to the judgment of conviction." Id.

We think this approach strikes an appropriate balance between the interests of both the State and the defendant. Allowing the prosecution to use a final conviction as evidence in the trial is consistent with Rule 803(22), as well as with the reality that the conviction is final and may have probative value. Because the conviction is simply evidence, however, and is not entitled to preclusive effect under collateral estoppel, the defendant may contest the conviction by introducing contrary evidence and argument. See Pullelo, 14 F.3d at 888.

In applying Rule 803(22), however, we emphasize that the trial court must find that the probative value of the prior conviction is not substantially outweighed by the risk of unfair prejudice. Tenn. R. Evid. 403; see also Pullelo, 14 F.3d at 888. In this regard, a leading treatise on Tennessee evidence states:

> The use of a prior criminal conviction has obvious prejudicial dangers. The jury will learn of the prior offense and may give it too much attention. They may use it as proof of bad character, and then use the bad character to infer liability [or guilt] in the instant case. To avoid this possibility, the court may invoke Rule 403 to exclude the proof of conviction. Counsel may offer to stipulate the facts underlying the conviction in order to avoid having certain details of the prior conviction revealed to the jury.

Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence, § 803(22) at 583-84 (3rd ed. 1995).

Accordingly, the admission of a prior conviction under Rule 803(22) protects the interests of article I, section 6 of the Tennessee Constitution because the same jury will be permitted to

consider the evidence, to make findings of fact, and to make determinations of guilt or innocence in the same proceeding. Before admitting such evidence, however, the trial court must apply the above principles and find that the probative value of the prior offense is not substantially outweighed by the risk of unfair prejudice.

## CONCLUSION

After reviewing the record and applicable authority, we conclude that the use of collateral estoppel by the prosecution against the defendant to establish an essential element of the charged offense violates the right to trial by jury under article I, section 6 of the Tennessee Constitution. We further conclude, however, that the prosecution is permitted to introduce evidence of the prior conviction if the trial court determines that its probative value is not substantially outweighed by the risk of unfair prejudice to the defendant. Accordingly, we affirm the Court of Criminal Appeals' judgment, and we remand to the trial court to hold the retrial consistent with the principles in this opinion. Costs of the appeal are taxed to the State.

_____
E. RILEY ANDERSON, JUSTICE