IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 23, 2012 Session

IN RE THE JAMES M. CANNON FAMILY TRUST

Appeal from the Circuit Court for Davidson County
No. 09P-753     Randy Kennedy, Judge

No. M2011-02660-COA-R3-CV - Filed November 30, 2012

The plaintiff filed this action alleging that the defendant killed the latter's husband thereby forfeiting any rights she had under a trust the husband had created. After the complaint was filed, the defendant was convicted of first degree murder in the death of her husband. The plaintiff filed a motion for summary judgment supported by the judgment of conviction and other documents. The defendant filed an affidavit denying any responsibility for her husband's death. While the motion for summary judgment was pending, the defendant filed a motion asking the trial judge to recuse himself. The trial court denied the motion to recuse. It then granted the motion for summary judgment. We affirm the trial court's decision to deny the motion to recuse but vacate the order granting the motion for summary judgment.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated in Part and Affirmed in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Andrew M. Cate, Nashville, Tennessee, for the appellant, Kelley E. Cannon.

Paul A. Gontarek and Anna E. Valentine, Nashville, Tennessee, for the appellee, Equitable Trust Company, Trustee of the James M. Cannon Family Trust.

OPINION

I.

On June 23, 2008, James M. Cannon ("the Victim") was found dead in a closet of his home. On April 29, 2010, his wife, Kelley E. Cannon ("the Widow"), was convicted of the

premeditated, intentional murder of the Victim. She appealed the conviction. After oral argument in this appeal, the conviction was affirmed.[1]

Before his death, the Victim established the James M. Cannon Family Trust ("the Family Trust"). After the Victim's death, the Family Trust was funded with the proceeds of numerous life insurance policies. Equitable Trust Company ("the Trustee") is the present trustee. After the Widow was charged with murder, but before her conviction, the Trustee filed this action seeking a declaration that the Widow had forfeited all rights under the Family Trust in light of Tenn. Code Ann. § 31-1-106 (2007), commonly known as "the Slayer Statute." That statute provides as follows:

> Any person who kills, or conspires with another to kill, or procures to be killed, any other person from whom the first named person would inherit the property, either real or personal, or any part of the property, belonging to the deceased person at the time of the deceased person's death, or who would take the property, or any part of the property, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right in the property, and the property shall go as it would have gone under § 31-2-104, or by will, deed or other conveyance, as the case may be; provided, that this section shall not apply to any killing done by accident or in self-defense.

***Id.***

The pertinent terms of the Family Trust are:

**<u>Item I</u>**

\*   \*   \*

> A. Upon the initial transfer to the trust and upon the receipt by the Trustee of additional contributions during my

---

[1]The Trustee filed a motion pursuant to Tenn. R. App. P. 14 asking that we consider, as a post-judgment fact, the opinion of the Court of Criminal Appeals furnished as an exhibit to the Trustee's motion. *See **State v. Cannon***, No. M2010-01553-CCA-R3-CD, 2012 WL 5378088 (Tenn. Crim. App., filed Oct. 30, 2012). The opinion is a matter of public record and is appropriate for consideration as a post-judgment fact pursuant to Rule 14. However, for reasons that will be explained later in this opinion, the resolution of the criminal appeal is not sufficient to sustain the grant of summary judgment.

lifetime, the Trustee shall promptly notify those of my then living issue, their spouses, and KELLEY S. CANNON, who I hereinafter refer to as my wife, that are specifically named in the instrument of transfer, that they shall have the rights listed in Paragraph B of this Item. . . . All notices shall be mailed by U.S. mail, with the notice of a donee who is a minor being sent to his or her natural parent who is my issue, or, if none, to his or her guardian. . . .

\* \* \*

## Item II

\* \* \*

A. During the period prior to the death of the last to die of my wife and me . . ., the Trustee is authorized to distribute the trust income and principal to or for the benefit of my wife and issue in such amounts and proportions among them as the Trustee, in his sole discretion, deems advisable for their support, health, education, and maintenance in reasonable comfort. . . . While the right to determine the recipients of the distributions lies solely with the Trustee, in making any distributions, the Trustee shall: (i) advise my wife before making any distribution to my issue; and (ii) bear in mind that my primary purpose in establishing this trust is to provide a source of assets that will be available to my wife during her lifetime. Nevertheless, due to the ability of the assets hereunder to pass for the benefit of my issue without the imposition of transfer taxes, it is my desire that the Trustee only make distributions to my wife in the event that she has exhausted the other sources of trust assets available to her that will, in all likelihood, give rise to estate tax upon her death. . . . . Upon the death of my wife, all of her interest in this trust shall cease.

\* \* \*

## Item III

* * *

F.    Since it is my desire that the responsibilities of becoming the Guardian of my minor children not negatively effect the Guardian's ability to maintain the standard of living that he or she would have enjoyed had he or she not become the Guardian, if a Guardian of my minor children is legally appointed following the death of the Survivor, then the Trustee is authorized to make distributions of income or principal to or for the benefit of such Guardian from the trusts created for my children hereunder in order to provide for such Guardian's ordinary living expenses or medical needs. . . .

* * *

## Item V

* * *

E.    The Trustee shall not be required to render an accounting to any court; however, an annual accounting of each trust herein created shall be rendered to my wife.  Upon her death, or if she predeceases me, the annual accounting shall be rendered to the then primary beneficiaries (or their guardians).

* * *

## Item VII

* * *

B.  My wife may direct the Trustee either to make any unproductive property of the Marital Trust (if any is in existence) productive or to convert such unproductive property to productive property.  Such direction shall be in writing. The Trustee shall have a reasonable time within which to comply with such direction by either approach that he deems more appropriate.

-4-

(Capitalization, bold print and underlining in original.)

In her answer, the Widow asserted her innocence as to the murder. She filed a motion for an accounting. The Trustee responded to the motion asserting that the Widow had no rights under the Family Trust in light of her conviction. The Widow replied that she was innocent and, even if she were guilty, some of the rights, such as the right to be provided with notices and an accounting, are not conditioned upon her right to inherit. The trial court ordered the Trustee to file an accounting under seal, subject to disclosure only to the court and the Widow's counsel. The court specifically ordered the Widow's counsel not to divulge to the Widow any of the information contained in the accounting.

The Trustee filed a motion for summary judgment along with a statement of undisputed facts. Exhibits to the motion include the indictment and judgment of conviction. In response to the Trustee's statement of undisputed facts, the Widow admitted that she had been convicted, but asserted that (1) the conviction was pending on appeal and (2) she "has maintained her innocence throughout the criminal proceedings and in all related civil matters, including this cause. . . ." The Widow filed an affidavit in support of her position that states: "I am not in any way responsible for the death of my Husband, James Malcolm Cannon."

While the motion for summary judgment was pending, the Widow filed a motion asking the trial judge to recuse himself. The sole ground stated in the motion was that the Victim's attorney, John Hollins, Jr., filed a pleading in a matter he initiated against the Widow's counsel with the Board of Professional Responsibility, which pleading allegedly "involves the Court to an extent that the Court's impartiality might reasonably be questioned and [indicates] that the Court has personal knowledge of disputed evidentiary facts concerning the proceeding." The exhibits to the motion to recuse include much, if not all, of the file in the disciplinary matter. Among the exhibits are orders signed by the present trial judge in other proceedings which (1) allowed the Victim's sister to cremate the Victim's body, (2) ordered that custody of the Widow's children be with someone other than the Widow, and (3) granted an application for fees requested by Mr. Hollins in the Victim's estate over the objection of the Widow's counsel.

The trial court denied the motion to recuse, but granted the motion for summary judgment. With regard to the motion to recuse, the court found that "there is simply no evidence in the record that would prompt a reasonable, disinterested person to believe that this Court's impartiality might reasonably be questioned in this matter." With regard to the motion for summary judgment, the court acknowledged the Widow's claim of innocence in her affidavit but determined "that this 'fact' is not material to the Court's consideration of

the Trustee's Motion for Summary Judgment and therefore does not preclude the Court from ruling on the Trustee's claim for declaratory relief."  The court held that the Widow

> has forfeited all right, title and interest in the Family Trust based on her conviction in the premeditated, unlawful, and intentional killing of [the Victim]. . . .  In addition, the Court DECLARES that [the Widow] has forfeited any rights that she may have under terms of the Family Trust to receive information concerning the administration of the Family Trust.

(Capitalization in original.)

## II.

The issues as stated verbatim from the Widow's brief are:

> Do the undisputed facts from the record support a ruling that, as a matter of law, . . . all of [the Widow's] rights and interest in the . . . Family Trust should be forever terminated?

> Did the trial judge abuse his discretion by failing to recuse himself in this cause?

## III.

A trial court's order granting summary judgment is subject to a de novo review.  No presumption of correctness attaches to the order.  *Sykes v. Chattanooga Housing Authority*, 343 S.W.3d 18, 26 (Tenn. 2011).  This means that, "[o]n appeal, we must freshly determine whether the requirements of Tenn. R. Civ. P. 56 have been met."  *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997).  As we said in *Sykes*:

> Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  In *Hannan*, this Court reaffirmed the basic principles guiding Tennessee courts in determining whether a motion for summary judgment should be granted, stating:

The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." **Byrd**, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the non-moving party to show that a genuine issue of material fact exists.

**Id.** at 25. Further,

[t]he standard by which our courts must assess the evidence presented in support of, and in opposition to, a motion for summary judgment is also well established:

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. **Robinson v. Omer**, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. **Staples v. CBL & Assocs., Inc.**, 15 S.W.3d 83, 89 (Tenn. 2000).

**Giggers v. Memphis Hous. Auth.**, 277 S.W.3d 359, 364 (Tenn. 2009). This Court stated the applicable summary judgment standard in **Martin** as follows: "the non-moving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the non-moving party." **Martin**, 271 S.W.3d at 84 (*citing* **McCarley v. W. Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998)).

**Id**. at 26.

A trial court's ruling on a motion for recusal is reviewed for an abuse of discretion. **Bean v. Bailey**, 280 S.W.3d 798, 805 (Tenn. 2009):

Such a decision "will not be reversed unless a clear abuse [of discretion] appears on the face of the record." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (alteration in original). "[A] trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

*Id*.

IV.

The Widow argues that her affidavit creates a genuine issue of material fact as to whether she killed the Victim. The effect of a murder conviction in a civil action brought pursuant to the Slayer Statute was examined closely in *Wilkerson v. Leath*, No E2011-00467-COA-R3-CV, 2012 WL 2361972 (Tenn. Ct. App. E.S., filed June 22, 2012). In *Wilkerson*, the trial court granted summary judgment against a beneficiary who, like the Widow, had been convicted of murdering her husband. The conviction was appealed. Unlike the present case, the criminal appeal was not decided by the time we released our opinion in the civil case. The only basis for the summary judgment was the criminal conviction. We reversed. We held that the criminal conviction could not be given res judicata or collateral estoppel effect because (1) the parties in the criminal prosecution and the civil action were neither the same nor were they in privity, and (2) the appeal of the criminal conviction prevented it from becoming a final judgment. *Id*. at 6. We also discussed the status of the conviction as evidence:

> While the judgment of conviction does not have preclusive effect, it may still be relevant and admissible upon remand to prove facts essential to sustain the judgment at trial, namely that Wife killed Husband. Indeed, the judgment of conviction may be admitted pursuant to Rule 803(22) of the Tennessee Rules of Evidence, which provides,
>
> > Evidence of a final judgment adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year to prove any fact essential to sustain the judgment, but not including, when offered by the prosecution in a criminal case for purposes other than

> impeachment, judgments against persons other
> than the accused. *The pendency of an appeal may
> be shown but does not affect admissibility.*

> (Emphasis added). Before admitting the judgment of
> conviction, the court "must find that the probative value of the
> prior conviction is not substantially outweighed by the risk of
> unfair prejudice." **State v. Scarbrough**, 181 S.W.3d 650, 660
> (Tenn. 2005) (*citing* [Tenn. R. Evid.] 403). If admitted, the
> judgment of conviction cannot be considered as "conclusive
> evidence of the facts necessarily determined in the underlying
> criminal proceeding." **In re T.H.**, No. 01A01-9412-JV-00600,
> 1996 WL 165511, at *2-3 (Tenn. Ct. App. Apr. 10, 1996)
> (citation omitted). Wife may "contest the conviction by
> introducing contrary evidence and argument" because the
> conviction is "simply evidence" and is "not entitled to
> preclusive effect under collateral estoppel." **Scarbrough**, 181
> S.W.3d at 660.

*Id.* at *7.

The Trustee acknowledges the holdings of **Wilkerson**, but argues that in the present case it is using the Widow's conviction as evidence and not seeking to give it preclusive effect. The Trustee even acknowledges that the Widow can challenge the conviction with contrary evidence. The Trustee argues that the Widow's affidavit supplies absolutely no facts and is no more than a "conclusory" proclamation of the Widow's innocence. The trial court apparently agreed; it stated that any "fact" set forth in the affidavit is "not material to the Court's consideration" of the merits of the motion. The Trustee cites two cases for the proposition that a conclusory statement will not prevent a court from granting a summary judgment. **Mechanics Laundry Serv. v. Auto Glass Co.**, 98 S.W.3d 151, 158 (Tenn. Ct. App. 2002); **Davis v. Campbell**, 48 S.W.3d 741, 747 (Tenn. Ct. App. 2001). Both cases are distinguishable. In **Mechanics Laundry**, the party made the assertion, without stating any particulars, that an employee of the other party had authority to execute a contract, but the other party and the employee both testified specifically by affidavit that she had never been given such authority. 98 S.W.3d at 157. **Davis** was a case filed by a prisoner pro se challenging his release date as calculated by Commissioner of Correction. 48 S.W.3d at 745. The best we can tell the prisoner did not file an affidavit but did file numerous documents that had been used to calculate his release date. *Id*. at 748. Those documents established as a matter of law that his release date had been calculated correctly. *Id*. Neither **Mechanics Laundry** nor **Davis** has any application to the present case. In this case, the Widow said, in

-9-

effect, that she did not kill her husband. Here we are dealing with a "fact" not a conclusion. What the Widow said in her affidavit would be admissible at a trial on the merits.

The Widow's affidavit must be taken in a light most favorable to her and all reasonable inferences that it will support must be drawn in her favor. *Sykes*, 343 S.W.3d at 26. A logical reading of her affidavit is that she did not kill the Victim and she did not hire anyone to kill the Victim. While the Widow's affidavit is concise, it is not conclusory. The testimony, if taken as true, is based upon her personal knowledge. *See*. Tenn. R. Civ. P. 56.06. The testimony is "material" because it directly addresses an element of the Slayer Statute. *See Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)(courts must examine the elements of the claim or defense to see whether the resolution of the fact will effect a claim or defense). The affidavit creates a "genuine" issue because if it is taken as true, without weighing it against the conviction – the procedure that must be followed at this summary judgment stage – it would support a finding that the Widow did not kill the Victim. She will no doubt face some vigorous cross-examination if she takes the witness stand in the civil trial, but, as previously noted, weighing of the evidence is not for the summary judgment stage. We hold that the Widow's affidavit created a genuine issue of material fact as to whether she killed the Victim. Accordingly, we hold that the trial court erred in granting the Trustee summary judgment.

The Widow makes an alternative argument that even if she has no right to inherit, she has not forfeited any rights that she may have under the terms of the Family Trust "to receive information concerning the administration of the Family Trust." The trial court based its holding that the Widow had no right to receive reports solely on the basis of forfeiture under the Slayer Statute. Since we have vacated that holding, we do not reach the merits of the Widow's alternative argument. Our holding, however, does not necessarily mean that the Widow is *immediately* entitled to the accounting and to all reports mentioned in the Family Trust. She argues that she is entitled to this information to protect the assets of her children. The record indicates that the Widow is presently incarcerated and that her children are now in the custody of someone else. These are facts we cannot ignore despite the rules applicable to summary judgment motions. We also cannot ignore that the incarceration is for the murder of the children's father. A guardian ad litem was appointed in the present case to protect the interests of the children. Our reversal of the summary judgment should not be interpreted as precluding the court from considering suspending or terminating the reporting requirements on some ground other than forfeiture under the Slayer Statute. Our holding means nothing more than that the trial court erred in terminating all of the Widow's rights under the Family Trust by summary judgment on the basis of forfeiture under the Slayer Statute.

We move now to the issue of the trial judge's denial of the recusal motion. The Widow's argument that the trial judge abused his discretion is apparently based on the idea that we should infer bias because the trial judge has ruled against her numerous times in numerous proceedings since the death of her husband. As the Supreme Court noted in the case of *Davis v. Liberty Mut. Ins. Co*., 38 S.W.3d 560 (Tenn. 2001):

> However, the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal. . . . If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Id.* at 565 (citations omitted). The Widow tries to bolster her case by arguing that the trial judge's rulings were very prejudicial to her. For example, she argues that by allowing the Victim's body to be cremated, the trial judge allowed the destruction of crucial evidence in the criminal trial. However, the order allowing the cremation references a "sworn statement of [the Widow] that she is making no further and will make no further objection to the cremation of the bodily remains of [the Victim]." Also, the Widow's brief makes it clear that the disciplinary proceeding, in which the trial judge was allegedly implicated as a witness, has been dismissed. It was the Widow's obligation, as the party moving for recusal, to come forward with evidence that would cause a reasonable, disinterested person to believe that the trial judge was biased. *Davis v. Tennessee Dep't of Employment Security*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). Our review of the record confirms the trial court's conclusion that the Widow failed to carry her burden of demonstrating actual bias or an appearance of bias. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for recusal.

V.

The judgment of the trial court is vacated in part and affirmed in part. The order granting summary judgment is vacated. The order denying the motion for recusal is affirmed. Costs on appeal are taxed to the appellee, Equitable Trust Company, Trustee of the James M. Cannon Family Trust. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

-11-